**Durwood CRAGO, on behalf of himself, Plaintiff,**

v.

**ROCKWELL MANUFACTURING COMPANY, Defendant.**

**Civ. A. No. 68–748.**

United States District Court
W. D. Pennsylvania.

July 8, 1969.

744

Conrad John Gates, Monroeville, Pa., and Martin M. Sheinman, of Morris, Safier & Teitelbaum, Pittsburgh, Pa., for plaintiff.

James R. Beilstein, Pittsburgh, Pa., for defendant.

### FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, and ORDER OF COURT

MARSH, District Judge.

This action was brought under § 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b), by the caretaker of a test station facility operated by defendant to recover unpaid compensation for overtime hours worked by plaintiff, liquidated damages in the amount of the unpaid overtime compensation, and a reasonable attorney's fee. Based upon our recollection of the testimony, in absence of a transcript, we find that the plaintiff is entitled to a judgment in the amount of $5835.

The defendant, Rockwell Manufacturing Company, is and was, at all pertinent times, an employer within the meaning of § 3 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 203. The plaintiff was at all pertinent times an employee of defendant within the meaning of § 3 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 203. Between June 27, 1966, and March 31, 1968, defendant employed plaintiff to engage in commerce and in the production of goods for commerce within the meaning of § 7 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 207.

Defendant operates a test station facility located in Plum Borough, Pennsylvania, which is used in testing the meters it manufactures and sells. On these premises are five large sheds which contain prover tanks, a compressor, a machine shop, a furnace and a fire control unit. Outside the sheds are a pipe line system with valves, meters, registers, and other controls, five large fuel storage tanks, and a house for use by the caretaker of the facility. The area is completely fenced in and there are "no smoking" and "danger" signs throughout.

On June 6, 1966, plaintiff having responded to a newspaper advertisement of an employment opportunity for a retired military man, went to defendant's office and had an interview with Mr. George McAllister, an employment supervisor employed by defendant. McAllister informed plaintiff that the position available was that of a caretaker at defendant's test station, and that the caretaker would be required to establish his resi-

dence in the house located on the premises and that he would have to remain on the property 24 hours a day. McAllister also informed him that his time off would be from 8:00 a. m. to 4:30 p. m. on two weeks days. During the interview, plaintiff filled out an application for employment as caretaker. McAllister then took plaintiff to the test station to observe the facility and the house.

At the test station, McAllister again told plaintiff that he would be required to remain on the premises 24 hours a day. McAllister showed plaintiff the facility and introduced him to Mr. Sheets who was retiring from the caretaker position to return to the Army. Sheets told plaintiff about the requirement that the caretaker remain on the premises 24 hours per day. Sheets also described his duties to plaintiff.

Plaintiff was hired by defendant, and on June 27, 1966, began the performance of his duties as caretaker at the test station. His duties consisted of general maintenance work most of which was performed between 8:00 a.m. and 4:30 p. m. under the supervision of Joseph Simonelli who was also stationed at the test station. During much of this time plaintiff was idle, sitting with Simonelli in the latter's office.

In addition to his activities between 8:00 a.m. and 4:30 p.m., plaintiff turned the test station's lights off before 8:00 a.m. and turned them on sometime after 4:30 p.m., depending on the arrival of dusk. Turning the lights on or off took approximately ten minutes. He also cut grass and shovelled snow when necessary, and walked around the premises on occasions between 4:30 p.m. and 8:00 a.m. However, most of this time he spent with his family and sleeping.

The position description prepared by defendant on February 2, 1965 relating to plaintiff's job includes:

"Performs general caretaker duties during periods when Test Station personnel are off duty. This will involve:

 a. Turning necessary lights on and off

 b. Occasional inspection of equipment on test and recording some data

 c. Occasional inspection of building and grounds

 d. Reporting emergency situations to supervisor",

and the accompanying performance standards "(CONDITIONS WHICH WILL EXIST WHEN EACH SEGMENT IS PERFORMED SATISFACTORILY)", include:

"a. Damage to grounds, buildings, equipment by trespassers is negligible.

b. Test data records are maintained as directed.

c. All emergency situations are reported immediately."

(Plaintiff's Ex. 1.)

A performance appraisal of plaintiff, reported by Joseph Simonelli, plaintiff's supervisor, on November 28, 1967, contains "acceptable" ratings with regard to:

"A. Buildings and grounds are kept free of trespassers resulting in no damage involved.

B. Data records are maintained.

C. Buildings and grounds are checked frequently and conditions are reported to supervisor when required."

(Plaintiff's Ex. 2.)

From June 27, 1966 to June 27, 1967, plaintiff did not leave the premises of defendant's test station except during the 8:00 a.m. to 4:30 p.m. period, two days a week, his time off, when other employees of defendant were working on the premises. On one occasion, he left the premises during the time that he was required to be there in order that he might take his father to a hospital. He reported this absence to Simonelli the next day. He remained on the premises during the weekends according to his instructions, but did not report to Simonelli with respect to his activities between 4:30 p.m. and 8:00 a.m.

In June, 1967, plaintiff's schedule was changed. His off-duty hours were changed to 4:30 p.m. Friday to 8:00 a.m. Monday, and his workweek was changed from the previous schedule to 8:00 a. m. Monday to 4:30 p.m. Friday. He remained on the premises throughout this latter period during each week through March 31, 1968, except that he spent one month in the hospital during this period.

In October, 1967, and at times thereafter, the plaintiff gave particulars of his employment to Wage and Hour personnel who investigated in February, 1968.

In March, 1968, Simonelli told plaintiff that he was free to leave the premises at any time other than the normal workweek of eight hours a day, five days a week.

Plaintiff's compensation for his services was $305 per month, based on a 40-hour workweek from June 27, 1966 through December 31, 1967, at which time his salary was raised to $325 per month. Plaintiff was also given the use of the house on the premises, but this was not considered by the parties to be value in consideration for plaintiff's services. He was not paid any overtime compensation.

Section 7 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 207 provides:

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce * * * for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a) (1).

The questions presented by the facts of this case are: (1) was plaintiff employed for workweeks in excess of forty hours per week, and (2) if so, for how many overtime hours per week was plaintiff so employed?

The controlling law is found in Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), and Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). In the Armour case, the Court stated:

"Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a standby capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." 323 U.S. at 133, 65 S.Ct. at 168.

Defendant hired plaintiff not only to perform general maintenance work eight hours a day, five days a week, but also to turn the lights on and off, to cut grass, shovel snow and to remain on the premises "refraining from other activity" and "to do nothing but wait for something to happen" during the remaining 16 hours a day.

We find, therefore, that plaintiff was employed by defendant for workweeks longer than forty hours.

To what extent plaintiff's time, exclusive of compensated hours, was compensable is a question of fact to be determined in the light of the circumstances in each case. Armour & Co. v. Wantock, supra, at 133, 65 S.Ct. 165; Skidmore v. Swift & Co., supra, 323 U.S. at 136–137, 65 S.Ct. 161.

A practical guide to the determination is found in the Regulations of the Administrator of the Wage and Hour Division, Department of Labor, which state:

"An employee who resides on his employer's premises on a permanent basis or for extended periods of time

is not considered as working all the time he is on the premises. *Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining,* and other periods of complete freedom from all duties when he may leave the premises for purposes of his own." 29 CFR 785.23. (Emphasis added.)

Although this regulation is not controlling upon the court, it does constitute an "informed judgment to which courts and litigants may properly resort for guidance." Skidmore v. Swift & Co., *supra,* at 140, 65 S.Ct. at 164. The Administrator's rationale has been adopted by most of the courts which have ruled upon cases similar to the case at bar. See: Bridgeman v. Ford, Bacon & Davis, 161 F.2d 962 (8th Cir. 1947); Bell v. Porter, 159 F.2d 117 (7th Cir. 1946), cert. denied 330 U.S. 813, 67 S.Ct. 1092, 91 L.Ed. 1267; Bowers v. Remington Rand, 159 F.2d 114 (7th Cir. 1946), cert. denied 330 U.S. 843, 67 S.Ct. 1083, 91 L.Ed. 1288; Rokey v. Day & Zimmermann, 157 F.2d 734 (8th Cir. 1946), cert. denied 330 U.S. 842, 67 S.Ct. 1082, 91 L.Ed. 1288; Harris v. Crossett Lumber Co., 62 F.Supp. 856 (W.D.Ark.1943). But cf. General Electric Co. v. Porter, 208 F.2d 805 (9th Cir. 1953), cert. denied 347 U.S. 975, 74 S.Ct. 787, 98 L.Ed. 1115.

■ Although plaintiff was a captive on defendant's premises for 16 unpaid hours of the day, we think that it would be unreasonable to hold that all, or most, of that time was time worked for purposes of the Act. Eight of those hours were spent by plaintiff sleeping and two were spent eating. Also, plaintiff had a wife and children who lived with him on the premises. In our opinion, three of the remaining six hours a day were spent by plaintiff in pursuit of purely personal matters as distinguished from the performance of his duty to act as caretaker of defendant's test station. Although plaintiff spent only a brief period in overtime each day in actual physical labor, such as turning lights on and off, this fact is not controlling as to the determination of the hours worked by plaintiff for purposes of the Fair Labor Standards Act. We find that, in the circumstances of this case, plaintiff was hired to serve and to be ready to serve and that he did so serve for 11 hours a day. Since he was paid for only eight of these hours, he must be compensated for the other three under the terms of the Act.

## COMPENSATORY DAMAGES

From June 27, 1966 to December 31, 1967, plaintiff worked three hours per day overtime for 468 days,[1] or a total of 1404 overtime hours, and he was compensated $5,490 for 390 normal eight-hour workdays, or 3120 working hours, at the rate of $1.76 per hour. Plaintiff was not paid overtime compensation at the rate of 1½ times the normal hourly rate of pay. This overtime compensation amounts to $3,706.56 ($2.64 x 1404 hours). From January 1, 1968 to March 31, 1968, plaintiff worked three hours per day overtime for 33 days,[2] or a total of 99 overtime hours, and he was compensated $975 for 65 normal eight-hour workdays or 520 working hours at the rate of $1.875 per hour. Plaintiff was not paid overtime compensation at the rate of 1½ times the normal hourly rate of pay. This overtime compensation amounts to $278.44 ($2.8125 x 99 hours).

A total of $3985 in overtime compensation is due and owing to plaintiff.

## LIQUIDATED DAMAGES AND ATTORNEY'S FEE

Section 16(b) of the Act provides that an employer who violates the overtime compensation provisions of the Act is lia-

---

1. Plaintiff did not work overtime on one day during this period when he took his father to the hospital. See p. 745, supra.

2. Plaintiff was in the hospital and did not work overtime for approximately one month during this period. See p. 746, supra.

ble to the employee affected for liquidated damages in the amount of the compensatory damages. However, § 11 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 260, provides that where an employer satisfies the court that his failure to pay an employee overtime compensation was in good faith and that he had reasonable grounds for believing that his failure was not in violation of the Fair Labor Standards Act of 1938, the court, in its discretion, may refuse to award liquidated damages or may award partial liquidated damages.

 When the caretaker position at the test station was created in 1954, defendant, having consulted with the Wage and Hour Division, Department of Labor, used a Belo-type contract compensating the caretaker for 52 hours of work. When defendant later decided that the physical labor incident to the caretaker job took less than 40 hours per week, without again consulting the Wage and Hour Division, it retained the same gross salary, but paid it on the basis of a 40-hour workweek. It was under this arrangement that plaintiff was employed and paid. Although defendant did not do all that might have been done by a reasonable employer in determining whether it was in compliance with the Act, such as securing from its legal department a reliable opinion incident to plaintiff's employment, and again seeking the advice of the Wage and Hour Division, this circumstance does not preclude defendant from protection under § 11 of the Portal-to-Portal Act of 1947.

 We find that the defendant acted in good faith and with reasonable grounds to believe that it was not violating the Fair Labor Standards Act of 1938 in failing to pay plaintiff overtime compensation. Accordingly, only partial liquidated damages in the amount of $600, representing plaintiff's loss of use of the overtime compensation due him, will be awarded. Cf. General Electric Co. v. Porter, *supra*, 208 F.2d at 816–817; Landaas v. Canister Co., 188 F.2d 768, 772 (3d Cir. 1951).

Defendant is required to pay, in addition to plaintiff's overtime compensation and partial liquidated damages, a reasonable attorney's fee and costs of the action. 29 U.S.C. § 216(b).

 No evidence on the reasonable value of the service rendered by plaintiff's counsel was presented at trial; however, the record contains a chronicle of the services rendered by him.[3] In our opinion the reasonable value of those services viewed in the light of the result, the time consumed and the specialty involved is $1,250.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter of this action by virtue of 28 U.S.C. § 1337.

2. Defendant is liable to plaintiff under § 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b), in the amount of $3,985 for overtime compensation from June 27, 1966 to March 31, 1968.

3. Defendant is liable to plaintiff under the provisions of § 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) and § 11 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 260, in the amount of $600 as partial liquidated damages.

4. Defendant is liable to plaintiff under § 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b), in the amount of $1,250 for a reasonable attorney's fee in this action.

5. Costs should be paid by the defendant.

---

3. The fact that plaintiff chose to have two lawyers represent him at 2½ days of trial has not increased the amount which we think is a reasonable fee.