Irma HALFERTY, Plaintiff–Appellee,

v.

**PULSE DRUG COMPANY, INC. d/b/a Pulse Ambulance Service, Defendant–Appellant.**

No. 87–5609.

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1989.

1186

Shelton E. Padgett, Kris J. Bird, Kaufman, Becker, Clare & Padgett, San Antonio, Tex., for defendant-appellant.

Gary Scarzafava, Judith A. Yacono, San Antonio, Tex., for plaintiff-appellee.

Before GEE, SNEED,* and WILLIAMS, Circuit Judges.

SNEED, Circuit Judge:

Pulse Drug Co., Inc., ("Pulse") appeals a judgment awarding damages and an attorney's fee to Irma Ruth Halferty under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (1982 & Supp.IV 1986). Pulse argues that the judgment impermissibly conflicts with an earlier order in the case and that Halferty's recovery is not proper under the FLSA. We reverse on the latter ground.

## I.

### FACTS AND PROCEEDING BELOW

Pulse provides nonemergency ambulance care to disabled individuals. Halferty worked for Pulse as a telephone dispatcher in her home from December 1981 to May 1984. She generally was on duty from 5:00 p.m. to 8:00 a.m. five nights per week. Halferty's work required her to answer a small number of telephone calls each night, but otherwise allowed her to pursue personal, social, and business activities. For example, she could and did eat, sleep, watch television, entertain guests, babysit, and do laundry. Halferty also could leave her home so long as she could have her calls forwarded or could find someone else to answer them.

Pulse initially paid Halferty $2.50 per night plus $1.00 per ambulance run, but later paid her a flat rate of $230.00 per month. Pulse also reimbursed her for some of her telephone expenses. Halferty, however, became dissatisfied with her compensation. In 1984, Halferty filed a complaint with the Wage and Hour Division of the Department of Labor alleging that Pulse had failed to pay her the minimum wage and the overtime compensation required by the FLSA. When the Department of Labor informed Halferty that Pulse had refused to pay any back wages, she sued Pulse in the United States district court below.

The district court, with former Chief Judge Sessions presiding, held that Halferty was an "employee" of Pulse under 29 U.S.C. § 216(a) (1982), and concluded that Pulse should have paid her the minimum wage and the overtime compensation required by §§ 206(a)(1) & 207(a)(1). The court ordered Pulse to pay Halferty $27,336.03 to compensate her fully for working seventy-five hours each week.[1] The court also awarded Halferty a $20,000 attorney's fee as permitted under § 216(b).

Pulse appealed to this court. After considering a variety of arguments, we concluded that the district court had not determined whether the so-called "homeworker's" or the "waiting to be engaged" exceptions to the minimum wage and overtime requirements of the FLSA should reduce Halferty's recovery. *See Halferty v. Pulse Drug Co.*, 821 F.2d 261, 264–68 (5th Cir.), *modified*, 826 F.2d 2 (5th Cir.1987). We, accordingly, remanded the case to the district court and instructed that court to address the exceptions.

The case was returned to Chief Judge Sessions who issued a written order stating that "Irma Ruth Halferty is within the homeworker's exception and the waiting to be engaged exception." Excerpts of Record (E.R.) at 4:1. The order instructed Halferty to submit proposed findings of fact and conclusions of law "in accordance with the partial reversal of the cause by the United States Court of Appeals for the Fifth Circuit." E.R. at 4:1. However, on November 1, 1987, before Halferty had taken any further action, Chief Judge Sessions

---

* Circuit Judge of the Ninth Circuit, sitting by designation.

1. Halferty recovered for two years of work under the court's interpretation of the period of limitations specified in § 255(a).

resigned. This case was assigned to Judge Bunton.

Halferty submitted proposed findings of fact and conclusions of law to the court. A slightly modified version of these were included in a final order issued on November 5, 1987, and amended on November 18, 1987. The order awarded Halferty $19,-607.88 in damages and a $28,184.00 attorney's fee.[2] The order did not reduce Halferty's compensation under either the homeworker's or the waiting to be engaged exceptions to the FLSA. The court ruled that Halferty did not have complete freedom while on duty and that she spent her waiting time predominantly for the benefit of Pulse. Pulse again appealed to this court.

## II.

### JURISDICTION

■ The district court had jurisdiction under 28 U.S.C. § 1331 (1982). Although Judge Bunton did not take the case directly on remand, the record, as discussed more fully below, shows that Chief Judge Sessions effectively did very little with the case after we remanded it to him. We thus conclude that Judge Bunton had authority to make findings of fact and conclusions of law under *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 438 n. 20 (5th Cir.1977) (stating that when a "district judge who tried [a] case has resigned from the bench ... [t]he judge to whom the case is assigned on remand may be able to make new findings of fact and conclusions of law on the existing record"). *Cf. Group Ass'n Plans, Inc. v. Colquhoun*, 466 F.2d 469, 472 (D.C.Cir.1972) (stating that, on remand, a new district judge can adopt previous findings or hold a new trial). This court has jurisdiction to hear an appeal from the

2. The court allowed only seventy-five weeks of work under its interpretation of the statute of limitations. *See* E.R. at 6:7–8.

3. Although we reverse Judge Bunton's decision on other grounds, we briefly address the issue because the existence of a conflict might require a different disposition of this case. Pulse also argues that a conflict in the orders would create

final judgment of a district court under 28 U.S.C. § 1291 (1982).

## III.

### STANDARD OF REVIEW

■ This court must accept Chief Judge Sessions' findings of fact unless they are clearly erroneous. *See* Fed.R.Civ. P. 52(a). The same is true with respect to Judge Bunton's findings of fact because they do not differ materially from those of Chief Judge Sessions. This court may review de novo a district court's conclusions of law. *See International Bhd. of Teamsters v. Southwest Airlines Co.*, 842 F.2d 794, 799 (5th Cir.1988).

## IV.

### CONFLICT IN ORDERS

■ Pulse argues that the judgment under review conflicts with Chief Judge Sessions' order which stated that Halferty was within the homeworker's and waiting to be engaged exceptions. We disagree.[3] In his written order, Chief Judge Sessions stated nothing more than that the homeworker's exception and the waiting to be engaged doctrine applied to the case; he did not state whether they required a reduction of Halferty's compensation. *See* E.R. at 4. Chief Judge Sessions merely intended to instruct Halferty to take the exceptions into account in submitting proposed findings of fact and conclusions of law. Although Judge Bunton subsequently ruled that neither doctrine required a reduction in Halferty's compensation, his decision does not conflict with Chief Judge Sessions' order. Both the order and decision found the exceptions to be "applicable." E.R. at 6:7.

an insoluble dilemma for Halferty: on one hand, if Chief Judge Sessions' order was final, then Judge Bunton could not change it; on the other hand, if Chief Judge Sessions' order was not final, then Fed.R.Civ.P. 63(a) would prohibit Judge Bunton from acting as his successor. We find it unnecessary to address either half of this dilemma.

## V.

### FAIR LABOR STANDARDS ACT

Pulse also charges the district court with eleven errors in its findings of fact and conclusions of law. We will not address each of the alleged errors separately because Pulse contends fundamentally that the district court erred in requiring it to pay Halferty for each and every hour that she was on duty. Pulse argues that Halferty did not work for all of these hours and that the FLSA does not require it to compensate her to that extent.

The FLSA's minimum wage and overtime requirements, set forth in 29 U.S.C. § 206(a)(1) and § 207(a)(1) (1982), are designed to apply readily and easily to workers whose jobs require them to show up at specific hours and to work more or less continuously while on their employers' premises. Like Halferty, however, not all workers have jobs that conform to such a pattern. As a result, as we noted in *Halferty*, 821 F.2d at 268–70, the courts have fashioned the so-called "waiting to be engaged" and "homeworker's" doctrines to make it possible to determine the compensation that such workers deserve under the FLSA.

These doctrines operate in different ways. The waiting to be engaged doctrine, as discussed more fully below, may entitle workers to receive compensation for periods of inactivity when they spend such periods waiting on their employers. *Id.* at 269. The homeworker's exception, by contrast, may allow an employer to pay an employee according to a reasonable compensation agreement instead of the FLSA's specific hourly rate requirements when the employer cannot determine the exact hours that the employee works. *Id.* at 268. In this case, we conclude that Halferty should not receive compensation for her inactive time under the waiting to be engaged exception. Moreover, we hold that Pulse properly paid Halferty under a reasonable compensation agreement because Halfer-

ty's duties made it difficult to determine the exact number of hours she worked.

### A. *The Waiting to be Engaged Doctrine*

In explaining the waiting to be engaged doctrine, we stated earlier that

when idle time is spent predominantly for the benefit of the employer, not the employee, the employee is engaged to be waiting, not waiting to be engaged, and is entitled to compensation. Conversely, if the time primarily benefits the employee, the employee can be considered to be waiting to be engaged, and should receive compensation only for actual work time.

*Halferty*, 821 F.2d at 269 (footnote omitted).

On remand, the district court found that Halferty's idle time "was predominantly time spent waiting to be engaged for [Pulse]," and ordered Pulse to compensate her for all of her hours. E.R. at 6:7. That is, Halferty's idle time was spent predominantly for the benefit of the employer, Pulse. We find this holding, if one of fact, clearly erroneous and, if one of law, plainly in error. The regulations at 29 C.F.R. §§ 785.14–.17 (1987) (which have codified and elaborated the waiting to be engaged doctrine), as well as the cases decided under these sections, prompt these conclusions.[4]

These regulations make clear that the critical issue in determining whether an employee should receive compensation for idle time is whether the employee can use the time effectively for his or her own purposes. *Id.* §§ 785.16–.17. The facts show that Halferty could visit friends, entertain guests, sleep, watch television, do laundry, and babysit. We, therefore, conclude that she could use the time for her own purposes and that she is not entitled to compensation for her idle time under the waiting to be engaged doctrine.

This holding comports with the cases decided under the regulations by other

---

**4.** None of these sections apply directly to the present case because none of them address homeworkers in the precise position of Halfer-

ty. *See Halferty*, 821 F.2d at 269 n. 8. The sections, however, do provide useful guidance.

courts. Employees who have received compensation for idle time generally have had almost no freedom at all. *See, e.g., Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 927 (11th Cir.1987) (employees entitled to compensation for waiting during sporadic periods when their poultry eviscerating line was shut down); *Brock v. DeWitt*, 633 F.Supp. 892, 895 (W.D.Mo.1986) (restaurant workers entitled to compensation while waiting during business lulls); *Smith v. Superior Casing Crews*, 299 F.Supp. 725, 730 (E.D.La.1969) (oil well workers entitled to compensation while setting up equipment and waiting for wells to reach a specific depth). Employees with freedom similar to Halferty's freedom, by contrast, have not received compensation for their idle time. *See, e.g., Norton v. Worthen Van Serv., Inc.*, 839 F.2d 653, 655–56 (10th Cir.1988) (idle time allowed employees to visit friends, pursue hobbies, and engage in similar activities); *Pilkenton v. Appalachian Regional Hosps., Inc.*, 336 F.Supp. 334, 336 (W.D.Va.1971) (idle time allowed employees to watch television, visit friends, eat, and sleep); *see also Irwin v. Clark*, 400 F.2d 882, 883–84 (9th Cir.1968) (on-call employees not entitled to compensation for time spent voluntarily on employer's premises), *cert. denied* 393 U.S. 1062, 89 S.Ct. 715, 21 L.Ed.2d 706 (1969); *Caryk v. Coupe*, 663 F.Supp. 1243, 1251–52 (D.D.C. 1987) (same).

### B. *The Homeworker's Exception*

■ We noted in *Halferty*, 821 F.2d at 268–69, that a federal regulation has attempted to capture the judicially created homeworker's exception as follows:

§ 785.23 Employees residing on employer's premises or working at home.

An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.

29 C.F.R. § 785.23 (1987). A Department of Labor regulation opinion has offered the following explanation of this regulation:

Section 785.23 of part 785 is applicable to an "on-call" employee who is required by his employer to remain at his home to receive telephone calls from customers when the company office is closed. Where an employee performs services for his employer at home and yet has long periods of uninterrupted leisure during which he can engage in the normal activities of living, the Department of Labor will accept any reasonable agreement of the parties for determining the number of hours worked. This agreement should take into account not only the actual time spent in answering the calls, but also some allowance for the restriction on the employee's freedom to engage in personal activities resulting from the duty of answering the telephone.

Department of Labor, Wage and Hour Administrator Opin. Letter (March 18, 1968) (Clarence T. Lunquist, Administrator).

The district court refused to permit Halferty's employment agreement to determine her compensation under the homeworker's exception for two reasons. First, the district court found that Halferty "did *not* have periods of complete freedom from her duties" as the second sentence of § 785.23 requires. E.R. at 6:7 (emphasis in original). Second, the district court found that Halferty and Pulse had reached an agreement that Halferty worked seventy-five hours per week. E.R. at 6:7. We must disagree with each of these reasons.

When deciding whether Halferty had the "periods of complete freedom" that § 785.23 requires, the district court should not have focused only on Halferty's on-duty time. The regulation does not require employees to have complete freedom during on duty time; the courts that have cited § 785.23 have looked to both on-duty time and off-duty time when evaluating an

employee's freedom. *See, e.g., Masters v. Maryland Management Co.*, 493 F.2d 1329, 1333 (4th Cir.1974); *Crago v. Rockwell Mfg. Co.*, 301 F.Supp. 743, 747 (W.D. Pa.1969). This must be done because Halferty—unlike many employees to whom § 785.23 might apply—did not reside on her employer's premises. The work premises were her home. Halferty had complete freedom during the day and, even while on duty at night, she had enough time for eating, sleeping, and entertaining. *Halferty*, 821 F.2d at 263. This is all the freedom that § 785.43 and the homeworker's exception require.

Section 785.23 makes clear that when an employee has such freedom, and when it is "difficult to determine the exact hours worked," an employer can pay the employee according any reasonable agreement that takes into consideration all of the pertinent facts. 29 C.F.R. § 785.23 (1987). In this case, Pulse could not have determined, except in an intrusive manner, the exact amount of time that Halferty spent dealing with telephone calls and dispatching ambulances. Moreover, it would be clearly erroneous to conclude that Halferty's compensation was not reasonable. Her pay far exceeded the price of comparable services. The record shows that Halferty collected an average of $230.00 each month when paid a flat rate and only somewhat less when paid a fixed amount per night and a small sum per ambulance run.[5] Comparable telephone answering services were available in the area for $35 to $50 per month. *See* III R. 140. Pulse, in addition, allowed Halferty to augment her personal freedom and income by permitting her to arrange for relief from friends and to pursue personal business endeavors such as babysitting and doing laundry. *See Halferty*, 821 F.2d at 263–64. We thus hold that the FLSA does not require that Halferty receive compensation greater than the amount she already has received.

We note, finally, that the district court erred when it concluded that Pulse agreed to pay Halferty for seventy-five hours per week. *See* E.R. 6:7. Although the Department of Labor opinion states that parties may make a reasonable agreement for determining the *number of hours* worked, the parties in this case never made such an agreement. As noted above, they agreed only that Halferty would receive a certain compensation and that she would be, or have someone be, available to answer the telephone for seventy-five hours each week. They did not hypothesize any specific number of working hours for the purposes of the FLSA. The case therefore does come within the specific facts contemplated by the Department of Labor opinion.

## VI.

### THE ATTORNEY'S FEE

Because we hold that Pulse should have prevailed below, we reverse the district court's decision to award Halferty an attorney's fee.

REVERSED.

---

**5.** From December 10, 1982, to May 21, 1984, which is the period that the district court ordered Pulse to comply with the FLSA, Halferty received approximately $3,700. *See* E.R. 6:3, 8. During this period, therefore, she received an average of about $205 per month.