Bryan LaPORTE, et al., Plaintiffs,

v.

**GENERAL ELECTRIC PLASTICS, BUSINESS GROUP BURKVILLE, ALABAMA, Defendant.**

Civ. A. No. 91–D–1151–N.

United States District Court, M.D. Alabama, N.D.

Oct. 7, 1993.

---

John W. Kelly, III, John E. Pilcher, Selma, AL, for plaintiffs.

Richard H. Gill, J. Fairley McDonald, III, Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

Now before the court is defendant's motion for summary judgment, filed July 27, 1992, to which the plaintiffs responded on September 1, 1992. The defendant supplemented its brief on October 9, 1992. Plaintiffs filed a cross-motion for summary judgment on October 9, 1992, to which the defendant responded on October 13, 1992. For the reasons discussed below, the court finds that defendant's motion is due to be granted in part and denied in part and that plaintiffs' motion is due to be denied.

### JURISDICTION

Jurisdiction is proper under 28 U.S.C. § 1331. Personal jurisdiction and venue are not contested.

### FACTS

General Electric Company (GE), operates a facility for the manufacture of plastics which is located in Burkville, Alabama. The facility, which manufactures a plastics product known as "Lexan," has been operating around the clock since its opening.

The plaintiffs are either maintenance mechanics or instrument electricians ("I/Es")[1] who are working or who have worked at the Burkville facility.[2] They are hourly employees and considered by GE to be "nonexempt" employees. Nonexempt status means that a worker is not exempt from the minimum wage and other requirements of the FLSA. From 1987 to 1991, the plaintiffs worked a 40–hour week, which consisted of five 8–hour days. From 1991 forward, the plaintiffs have worked a 40–hour week which consists of four 10–hour days. When hiring new employees, GE informs its potential employees that they will be expected to work overtime.

In 1987, GE initiated a practice[3] at the facility which required the plaintiffs to be "on call" at all times so that if equipment at their plant needs maintenance or repair, the manager can call them and get the equipment fixed as soon as possible. The employees are not compelled to report to any particular location in order to wait for incoming calls, but are required to wear paging devices. Upon receiving a page, the GE employees must phone the "team lead"[4] as soon as possible after receiving the page. The team lead and the person called are supposed to make an effort to resolve problems over the phone so that the employee does not have to report to the Burkville facility.

The plant managers generally plan the on-call schedules a year in advance. The pager is rotated among the maintenance mechanics and the I/Es on a periodic basis, each turn lasting at least one week. The amount of time between rotations varies with the different job descriptions. One person, Ivey, remains on call at all times. The others are on call from periods ranging from every other week to once every five weeks.

The plant operations team keeps track of the employees who are currently carrying the pager. If the person assigned the pager does not respond or cannot be located, the team lead will call another. Failure to re-

---

1. Plaintiff Michael Carnley is the only plaintiff who does not perform one of these two jobs—he was a "chemical operator." Originally, there were 17 plaintiffs. However, two of the plaintiffs, Steven Cole and Bob Groves, have admitted that their claims are time-barred. Accordingly, the court finds that the defendant is entitled to summary judgment on those two claims.

2. The manufacture of plastics requires a number of different chemical processes, the Burkville facility is composed of several different "plants." The plants involved in the instant case are Plants 1 and 2 which produce resin, Plant 4 which

handles brine recovery, and Plant 5 which executes the finishing process.

3. GE does not have a written policy. In fact, the Burkville facility is the only GE facility which has a mandatory on-call system. Other facilities use a voluntary system or assign employees to different shifts.

4. The "team lead" is the person responsible for keeping an area of the plant operating and for overseeing maintenance operations.

spond can result in reprimands or other forms of discipline which can affect the employee's work record. However, such discipline is rarely imposed.

The team lead will occasionally call a person other than the one to whom the pager was assigned if he or she has need of that person's particular expertise. In this situation, a response from the employee is apparently optional.

Each call can last anywhere from five minutes to twenty minutes. In many cases, the "call" is really a series of calls, as the team lead implements the employee's suggestion, finds that it does not solve the problem and then calls back. At that point, the employee and the team lead may have another phone conference, or the team lead may decide to call the employee back to the facility.

While on call, the plaintiffs testified that they went hunting and fishing, attended technical school, held second jobs, worked in outside businesses, went to church or other religious services, visited with friends and family, and were able to arrange their schedules so that they could take advantage of their accrued vacation time. (See Carnley Dep. at 77, 80–81; Johnson Dep. at 49; May Dep. at 45–47; Phillips Dep. at 62; Shirley Dep. at 66, 72; Traywick Dep. at 72–73). Essentially, the employees are free to do what they want and to go where they want, as long as they remain within pager range. In fact, they are allowed to travel outside the range of the paging device as long as they leave a phone number where they can be reached. An employee who lives a long way from the Burkville facility or one who might have to repair a complex piece of machinery will most likely refrain from drinking heavily or taking drugs in quantities sufficient to impair his or her performance, although several employees have admitted that they drink moderately when on call. There are no other restrictions, except those mandated by common sense and good judgment.

The on-call employees are paid whenever they return to the plant in response to a page.[5] They receive a minimum of 4 hours pay no matter how swiftly they resolve the

problem. They also receive overtime when the problem occurs on a holiday or a weekend or when the problem takes a long time to correct. However, they are not compensated for time spent on call, for time spent on the phone with the team lead trying to solve the problem, or for time spent en route to and from the Burkville facility when answering a call.

GE does not maintain records of the phone calls made by the team leaders, although it does have records of the actual callbacks. Due to the differences in schedule, it is difficult to generalize about the frequency with which employees are called back to the facility to perform repairs. In no case does it appear that an employee was called back to the facility more than once per week.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and deter-

---

**5.** This situation is known as a "call back."

mine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

## DISCUSSION

The plaintiffs argue that they are entitled to overtime compensation for the time spent on call. In the alternative, they argue that, at the very least, they should be compensated for the time spent on the phone with the team lead and for the time spent travelling to and from the Burkville facility.

### A. On–Call Time

■ The Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.* requires employers to pay overtime to employees who work more than forty hours per week. 29 U.S.C. § 207(a)(1) (1993). The plaintiffs claim that they are at work while they are on call and that they are entitled to overtime compensation for the time spent on call.

The Supreme Court has held that the time an employee spends waiting to work is compensable if the waiting time is spent "primarily for the benefit of the employer and his business." *Armour & Co. v. Wantock,* 323 U.S. 126, 132, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944) (citation omitted). The Court has described the distinction between compensable and noncompensable time in the following manner: if the employee was "engaged to wait," then he or she is entitled to be compensated for that time, but if the employee was "waiting to be engaged," then the employer is not obligated to pay. *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). While the Court has not established a rigid formula to determine when "waiting time" is overtime, most courts have considered two factors: (1) whether the employee was free to engage in personal activities and (2) whether there were any agreements between the parties. *Owens v. Local No. 169, Association of West-*

*ern Pulp and Paper Workers,* 971 F.2d 347, 350 (9th Cir.1992).

■ In most cases, the determination will be heavily factual, dependent upon all the circumstances of the case. *Wantock,* 323 U.S. at 133, 65 S.Ct. at 168. However, as the Eleventh Circuit noted in *Birdwell v. City of Gadsden,* 970 F.2d 802, 807 (11th Cir.1992), "whether a certain set of facts and circumstances constitute work for purposes of the FLSA is a question of law." Here, the parties agree on the contours of the on-call program, enabling the court to decide as a matter of law whether the plaintiffs are entitled to relief.

■ In general, it appears that the employee's freedom of movement and activity must be quite restricted before he or she will be considered "at work." For example, in *Birdwell,* the plaintiffs, a group of police officers, claimed that their time spent on call was compensable. Their employer required them to leave a forwarding number with the department or to purchase and wear a beeper at all times. *Id.* at 808. This prevented the plaintiffs from participating in outdoor activities, such as hunting or fishing and from going on outings with their families, unless they took two cars. *Id.* They were prohibited from drinking alcohol. *Id.* However, the plaintiffs were allowed to leave home and to use the time spent at home in any manner they wished. *Id.* After considering these factors, the *Birdwell* panel reversed the district court's denial of defendant's motion for judgment notwithstanding the verdict, holding, as a matter of law, that the time the plaintiffs spent on call was not work. After discussing several cases from the Fifth and Tenth Circuits, the panel concluded: "[I]t is clear that an employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA." *Id.* at 810.

The *Birdwell* panel cited with approval several Fifth Circuit cases. For example, the Fifth Circuit, sitting en banc, similarly held that a man who was required to spend all of his off-duty time on call and who was required to appear at his worksite within twenty minutes of being called, was not

working while he was on call. *Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671, 673 (5th Cir.1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). In *Bright,* one member of the court even acknowledged that the plaintiff's job was "oppressive"—the plaintiff was never relieved by another officer and never had a vacation throughout an 11–month period—but nonetheless held that Bright's on-call time was not work under the FLSA. *Id.* 934 F.2d at 679 (Williams, J., dissenting).

In an earlier case, a panel of the Fifth Circuit concluded that a plaintiff who served as a dispatcher for a nonemergency ambulance service was not entitled to receive the minimum hourly wage while she was on call because she was not at work.[6] *Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1187 (5th Cir.1989). The *Halferty* panel concluded that because the plaintiff could "visit friends, entertain guests, sleep, watch television, do the laundry and babysit," she was using the time predominantly for her own benefit. *Id.*[7]

Other courts which have considered the issues have reached the same conclusion: unless the employee's activities are severely restricted while he or she is on call, on-call time is used primarily for the employee's benefit, not the employer's. For example, in *Owens,* the plaintiffs were a group of mechanics, working at a pulp mill in Hoquiam, Washington. *Owens,* 971 F.2d at 348–49. Like the plaintiffs in the instant case, the *Owens* plaintiffs were required to spend a certain amount of their free time on call, carrying a pager or leaving a phone number where they could be reached. The mechanics were required to take their "fair share" of calls, but they could decide which calls to take. Upon receiving a call, a mechanic had to return the call within ten minutes. Although the trial court granted summary judgment in favor of the plaintiffs, the appellate court reversed and remanded, directing the district court to enter judgment in favor of the defendant employer. *Id.* at 356. The *Owens* panel, after examining the record, observed that there was no question but that the employees' on-call time was used primarily for their own benefit rather than their employer's.

In contrast, a panel of the Tenth Circuit held that a group of firefighters whose on-call time was consistently interrupted by calls from headquarters were entitled to overtime pay. *Renfro v. City of Emporia,* 948 F.2d 1529, 1535 (10th Cir.1991). The record showed that the firefighters could expect to be called out at least four to five times during each on-call period. Because the interruptions were so frequent, the firefighters' time could not be spent for their own benefit.

Here, the court finds that while the plaintiffs are on call, they are not at work, but are using the time primarily for their own benefit. Like the *Birdwell* plaintiffs, they are required to wear a pager which may interfere with their pursuit of certain activities. However, for the most part, the plaintiffs are free to do whatever they want during their off hours, as long as they are not too far from a phone. Indeed, the plaintiff in one of the cases cited by the *Birdwell* panel was subject to far more onerous restrictions than those faced by the plaintiffs here: plaintiff Bright had not taken a vacation in 11 months, was on call every minute of every day, was required to refrain from drinking, and had stringent limitations on his response time. In spite of the "oppressive" on-call conditions, the court still held that his time was used primarily for his own benefit and not for his employer's.

The plaintiffs have testified that they limit their participation in activities because they

---

**6.** Her company paid her a flat rate for each night she was on call and an additional sum for each ambulance she summoned.

**7.** The *Birdwell* panel refers to only one case in which employees were compensated for time spent on call. In *Renfro v. City of Emporia,* 948 F.2d 1529 (10th Cir.1991), the plaintiffs, a group of firefighters, were on call at all times. Although in theory they were free to pursue other activities—hobbies, part-time jobs—in practice, they were interrupted so often that it was difficult, if not impossible, to pursue other activities be they recreational or secondary employment. The *Birdwell* panel appeared to regard the frequency of interruption as the most significant factor.

fear interruptions. However, nothing inherent in GE's work practice requires such a limitation. Unlike the plaintiffs in *Birdwell* and in *Bright*, the GE employees are not required to refrain entirely from alcohol consumption, even though it might be more prudent to do so. No geographical restrictions are placed on the plaintiffs, as long as they leave a phone number where they can be reached. The plaintiffs have admitted that they have engaged in a wide range of activities while on call; activities ranging from attending technical school to working in another job to visiting with friends and family. It is clear to the court that the plaintiffs' on-call time is spent primarily for their own benefit. Accordingly, defendant GE is entitled to judgment as a matter of law on this issue.

### B. *Telephone Time*

First, the court notes that the time spent in transit is not compensable. Under the Portal-to-Portal Act of 1947 ("the Portal Act"), 29 U.S.C. § 254(a)(1), time spent travelling to and from one's place of employment is not considered work for purposes of the FLSA. In particular, the Portal Act provides:

> [N]o employer shall be subject to any liability or punishment under the [FLSA] ... on account of the failure of such employer to pay an employee ... overtime compensation, for or on account of any of the following activities of such employee ...
>
> (1) walking, riding or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform.

29 U.S.C. § 254(a) (1985).

While this obviously applies to the initial drive to work, it also covers the time the plaintiffs spent travelling to Burkville after speaking with the team lead on the phone. As discussed in more detail below, the "principal activity" for which the I/Es and the

mechanics were hired is the maintenance of equipment. The place of performance is, of course, the plant where the equipment is located. Thus, it appears that the drive to and from Burkville is not "work" for purposes of the FLSA.

On the other hand, the plaintiffs may be able to show at trial that they are entitled to compensation for the time actually spent on the phone.[8] In *Wantock*, the Supreme Court noted that work can involve mental as well as physical labor, as long as the activity pursued is "controlled by or required by the employer and primarily for the benefit of the employer and his business." *Wantock*, 323 U.S. at 132, 65 S.Ct. at 168. If the time spent on call is time spent "waiting to be engaged," then the time spent helping an employer solve its technical difficulties surely is the "engagement" for which the employee was waiting.[9]

While the employees are talking with the team lead, they are unable to do anything else. The fact that the plaintiffs may be in the comfort and privacy of their own homes rather than at the Burkville facility, does not mean that they are not working. In contrast to the time spent on call, this time is used primarily for GE's benefit.

In response, defendant GE first argues that the phone time falls within a *de minimis* exception to the FLSA. As the Supreme Court has observed:

> When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA]. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

---

8. While talking with the team lead about a maintenance problem or waiting for a repair suggestion to be implemented, the I/Es and mechanics are not waiting to be engaged, but are actually engaged in the "principal activity" for which they are hired, assisting in the repair and maintenance of plant facilities.

9. Defendant GE argues that not all of the phone calls are "work" as contemplated by the FLSA. Defendant's Supplemental Brief at 9 n. 5.

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692, 66 S.Ct. 1187, 1194, 90 L.Ed. 1515 (1946).

It appears from the record that the team leads' phone calls varied widely in length and in complexity of matters discussed. A forty-five second phone call, followed by an immediate return to the plaintiff's prior activity, is most likely a "trifle" and should remain uncompensated. However, if the team lead tells the employee to stand by while he or she tries to fix the mechanical problem and to await a second or third phone call, the employee is forced to set aside whatever he or she is doing and wait to hear from the team lead. Thus, while the initial phone call might last five minutes, the employee might spend the next fifteen minutes waiting for a second phone call which might last ten minutes. In contrast to the time spent on call, when the plaintiffs might never be contacted, when they have been called once and are waiting for a second call which they know will soon come, they are being "engaged to wait," rather than "waiting to be engaged"[10] and deserve compensation.

Defendant GE next argues that telephone time is "preliminary" to the plaintiff's "principal activity" of repairing inoperative machinery. The Portal Act, 29 U.S.C. § 254(a)(2) provides that "no employer shall be subject to any liability or punishment under the [FLSA] . . . on account of the failure of such employer to pay an employee . . . overtime compensation for . . . activities which are preliminary or postliminary to said principal activity or activities." 29 U.S.C. § 254(a) (1985).

■■■ The Portal Act does not define "preliminary" or "principal" activities. The regulations promulgated by the Wage and Hours Division of the Department of Labor do not provide a "categorical list" of preliminary activities, "since activities which under one set of circumstances may be 'preliminary' or 'postliminary' activities, may under other conditions be 'principal' activities." 29

C.F.R. § 790.7(b) (1992). In general, when an employee's activity is performed for his or her own benefit, it is considered preliminary, even if it takes place at the employer's place of business. For example, "if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered a 'preliminary' . . . activity." 29 C.F.R. 790.8(b) (1992). On the other hand, when the employee's job necessitates the performance of certain clothing or the performance of certain routine maintenance tasks, these activities are considered "principal," even though they occur before the official start of the work day. *See Id.* § 790.8(b).

In the instant case, the court is unable to determine categorically whether the phone calls are preliminary or principal. Such a determination will depend on the nature of the conversation between the parties. For example, if a team lead calls and says to an I/E, "Come up to the plant, we have a serious problem with the brine-recovery machine," this call is probably a preliminary activity.[11] On the other hand, if the team lead describes the equipment problem to the I/E who then tells the team lead how to correct the malfunction, this call probably falls into the category of principal activities, because the I/E has done exactly the same thing that he or she does for ten hours a day—help GE keep the facility running.

■■■ The plaintiffs will bear the burden of proving their entitlement to this time at trial. Both parties admit that GE did not keep accurate records of the phone calls made by the team leads. However, the fact that an employer has failed to maintain adequate records will not necessarily preclude plaintiffs' recovery of overtime pay. *Brock v. Norman's Country Market, Inc.,* 835 F.2d 823, 825 (11th Cir.1988). If inaccurate or incomplete records have been kept, the employee need only show that he or she "has in fact performed work for which he was improperly compensated and . . . produce suffi-

10. As the *Birdwell* panel, citing *Renfro,* acknowledged: when the interruptions are so frequent as to prevent the employees from using their on-call time for their own benefit, the employees must be compensated for the time spent on call.

11. In addition, this type of call probably falls within the *de minimis* exception discussed above.

cient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 828 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946)).

There exists a genuine issue of material fact as to whether the time spent on the telephone between team leads and I/Es and mechanics, respectively, was a "principal activity" under the FLSA. Accordingly, a judgment for either party as a matter of law is inappropriate, and both plaintiffs' and defendant's motions for summary judgment are due to be denied as to this issue.

### C. Statute of Limitations

■ Under the FLSA, as amended, an action to recover unpaid overtime compensation must be brought within two years after the cause of action accrued. 29 U.S.C. § 255(a) (1985). If the employer "willfully" violated the FLSA, the employees may bring an action within three years. *Id.* In order to prove a willful violation, the plaintiff must prove that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130, 108 S.Ct. 1677, 1679, 100 L.Ed.2d 115 (1988) (citing *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)).

■ The court has determined that the plaintiffs may be able to demonstrate that they deserved to be compensated for time actually spent on the phone with their team leads. According to the plaintiffs, GE paid no attention to the requirements of the FLSA when it developed its on-call practice and was, at the very least, reckless in adopting work the practice without first checking to see if the FLSA was implicated. If GE did not make an effort to determine if the policy violated the FLSA, the failure to make that determination would be reckless. *See McLaughlin*, 486 U.S. at 133, 108 S.Ct. at 1681 (noting that "it would be virtually im-

possible for an employer to show that he was unaware of the Act and its potential applicability" (quoting *Trans World*, 469 U.S. at 128, 105 S.Ct. at 625)).

However, defendant GE denies this. GE insists that it took the FLSA into account when it devised the call-in system and that its managers believed that GE did not have to pay the I/Es and mechanics for their phone time. GE has also provided the court with a copy of a memorandum from Sherry Woodry, the Manager of Nonexempt Relations,[12] to its managers discussing the legal ramifications of telephone time. *See* Def.'s Supp.Br., App. A. In this document, dated July 22, 1991, Ms. Woodry concludes, as the court does here, that phone time may be compensable if the conversations are long enough, writing in response to a question from Mr. Goff: "[A]n employer is not required to compensate nonexempt employees for ... business discussions over the phone, as long as [ ] the phone call is for an incidental amount of time ... If the employee ... can answer the question in a few minutes, that's okay." *Id.* During her deposition, Ms. Woodry testified that she contacted GE's in-house counsel, Mr. Ralph Ford, and consulted him about the on-call practice. (Woodry Dep. at 8).

As to the issue of willfulness, the court finds that there is a genuine issue of material fact whether GE acted willfully while perpetrating any alleged violations of the FLSA. Consequently, the defendant's motion for summary judgment as to the statute of limitations is due to be denied.

### D. Liquidated Damages

■ The plaintiff also seeks liquidated damages. Section 216(b) of the FLSA allows the court to impose liquidated damages in an amount equal to the unpaid overtime. 29 U.S.C. § 216(b) (1993). However, the court does not have to award liquidated damages if the defendant can show that it acted in good faith. The Portal-to-Portal Act provides that

---

12. Ms. Woodry is Manager of Nonexempt Relations. She is responsible for human resource support for the production and maintenance work force, which includes staffing, the creation of policies and practices, and the management of benefits administration, including the supervision of benefits which relate to sick leave and vacation. (Woodry Dep. at 6–7).

if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . , the court may, in its sound discretion, award no liquidated damages. . . .

29 U.S.C. § 260 (1985).

■■■■ This inquiry has both an objective and a subjective component. *Dybach v. State of Florida Dep't of Corrections,* 942 F.2d 1562, 1566 (11th Cir.1991). In order "to satisfy the subjective 'good faith' component, the [employer has the burden of proving] that [it] had 'an honest intention to ascertain what [the FLSA] requires and to act in accordance with it.'" *Id.* (quoting *Brock v. Shirk,* 833 F.2d 1326, 1330 (9th Cir.1987) (per curiam), *vacated on other grounds, Shirk v. McLaughlin,* 488 U.S. 806, 109 S.Ct. 38, 102 L.Ed.2d 18 (1988)) (internal citations omitted).

As discussed above, GE management sought the advice of in-house legal counsel to determine if their on-call work practice complied with the FLSA. (*See* Woodry Dep. at 8–10). The plaintiffs claim that defendant GE implemented the on-call policy without first ascertaining whether the policy complied with the FLSA. (*See* Pls.' Br. in Opp'n to Def's Mot. for Summ.J. at 35). A genuine issue of material fact exists regarding whether GE acted in good faith. As a result, the court finds that the plaintiffs' motion for summary judgment concerning liquidated damages is due to be denied.

### CONCLUSION

Therefore, it is CONSIDERED and ORDERED that the defendant's motion for summary judgment be and the same is hereby GRANTED as to the time plaintiffs spent on call and in transit, but DENIED as to the time actually spent on the phone and as to the statute of limitations. It is CONSIDERED and ORDERED that the plaintiffs' cross-motion for summary judgment be and the same is hereby DENIED as to all issues.