Frederick George BRIGHT,
Plaintiff–Appellant,

v.

HOUSTON NORTHWEST MEDICAL CENTER SURVIVOR, INC.,
Defendant–Appellee.

No. 88–2884.

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1989.

Maurice Bresenhan, Jr., Campbell, Athey, Zukowski & Bresenhan, Houston, Tex., for plaintiff-appellant.

Gail Magers, Sullins Johnston Rohrbach Magers, Houston, Tex., for defendant-appellee.

Before JOHNSON, WILLIAMS and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant, Frederick George Bright, sued Houston Northwest Medical Center Survivor, Inc. (Northwest) for overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* The district court granted summary judgment for Northwest. Convinced that a genuine issue of material fact exists and that Bright's case cannot be decided as a matter of law, we reverse.

Bright alleges the following facts. He worked as a biomedical technician for Northwest from April 1981 until January 1983. Between April 1981 and February 1982, Bright worked a forty-hour week for which he was paid an hourly wage. In February 1982, Bright's work life changed drastically. He was given an electronic pager previously worn by another employee, who had since resigned from his job, and was told that in addition to his forty-hour week he would be required to be on call at all times. "On call" meant that he would need to be available twenty-four hours a day, seven days a week, 365 days a year to arrive at the hospital within twenty minutes of the time that he was paged, and in a physical and mental condition to repair complicated biomedical equipment. Two months after he was given the pager, Bright was promoted to a managerial position, although it appears from the record that the promotion had no effect on the terms or conditions of his employment.

During the time that Bright wore the pager, he was generally paged three to four times a week to service equipment. He received four hours of compensation time for each call that he made, regardless of the amount of time he took to repair the equipment.

Bright now sues for overtime compensation for the time that he was on call. He complains that he could not effectively use the on call time for his own purposes because of the restrictions placed on him by Northwest. Northwest claims that the restriction was minimal, that Bright was merely required to wear a pager, and that during the time that he was not called out, his time was not spent primarily for the benefit of the employer and was not compensable.

I.

Summary judgment is properly granted when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Bright brings this claim under the Fair Labor Standards Act. 29 U.S.C.A. § 207(a)(1) reads:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Bright claims that under the Act he is entitled to overtime compensation for at least a portion of the time he spent while on call, even though he had not been called out.

Two Supreme Court cases have laid the groundwork for evaluating Bright's claim. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944). In those cases the Court held "that no principle of law found either in the statute or in Court decisions precludes waiting time from also being working time." *Skidmore*, 323 U.S. at 136, 65 S.Ct. at 163. Refusing to "lay down a legal formula to resolve cases so varied in their facts," the *Skidmore* court determined that "[w]hether in a concrete case such time falls within or without the Act is a *question of fact* to be resolved by appropriate findings of the trial court.... Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged." *Id.* at 136–37, 65 S.Ct. at 163 (emphasis added). *See also Armour*, 323 U.S. at 133, 65 S.Ct. at 168 ("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.").

█ Because we believe that a genuine factual dispute exists about whether Bright's on call time constituted time that Bright was engaged to be waiting, we reverse summary judgment. A reasonable jury could, if all claimant's assertions are accurate, return a verdict for Bright.

## II.

Northwest contends that summary judgment is proper because, in a number of other cases with similar facts, courts have determined that on call time was not compensable. Northwest also points to the interpretative regulations under the FLSA, which it asserts requires the conclusion that Bright's on call time does not constitute working time under the FLSA. Neither the case law nor the regulations, however, are as clear as Northwest urges.

In determining when waiting time raises a question of fact under the FLSA, the Supreme Court in *Skidmore* discussed the factors that should be taken into account by the trial court: "This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances." *Skidmore*, 323 U.S. at 137, 65 S.Ct. at 163. While Northwest correctly argues that it entered into no agreement to pay Bright for on call time, lack of agreement does not end the inquiry. We must also consider the other factors listed in *Skidmore*.

The nature of Bright's service differs from that involved in other cases in one important respect: Bright asserts and Northwest does not deny that he never had any reprieve from on-call duties. The relentless character of the job seriously disrupted and changed his life. Bright claims, for example, that as a result of the "twenty minute leash" kept on him twenty-four hours a day, 365 days a year, he and his wife were no longer able to visit friends in Houston and the Houston area if they lived more than twenty minutes from the hospital. Nor could they travel out of the city on weekends or go on vacation. Additionally, Bright could not supplement his income with part-time work, as he had previously done, and he was prevented from furthering his education. The requirement

that he be able to arrive in a physical and mental condition to repair the complex machinery curtailed his enjoyment of parties and other recreational situations since he could drink alcoholic beverages only with great care and constant concern. Certainly the unusual and all-consuming nature of these restrictions creates a genuine issue of material fact as to the extent he was working during on call time.

■ Northwest contends that its position is validated by interpretative regulations promulgated by the Wage and Hour Administrator. Since that regulation basically codifies *Armour,* it is not as conclusive as Northwest suggests. The interpretation reads:

> An employer who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call". An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

29 C.F.R. § 785.17. Northwest concludes from the second sentence that Bright was not working while on call. But Bright's situation is not the situation anticipated by the regulation. Bright was not "merely required to leave word at his home." Rather, Bright argues that he was required to remain so close to the employer's premises that he could not use the time effectively for his normal personal purposes. And as we have recently pointed out, "[t]hese regulations [29 C.F.R. §§ 785.14–.17] make clear that the critical issue in determining whether an employee should receive compensation for idle time is whether the employee can use the time effectively for his or her own purposes." *Halferty v. Pulse Drug Co., Inc.,* 864 F.2d 1185, 1189 (5th Cir. 1989). Focusing on this issue, we believe a reasonable jury could find that Bright's relentless on call time was compensable time under the FLSA.

Such a construction is supported further when § 785.17 is read in conjunction with § 785.16, which defines "off duty:"

> Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived. Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case.

29 C.F.R. § 785.16(a). The interpretative regulations, then, even giving them due respect,[1] are not conclusive.

Northwest and the district court relied most heavily upon the U.S. District Court's decision in *Pilkenton v. Appalachian Regional Hospitals, Inc.,* 336 F.Supp. 334 (W.D.Va.1971). That case also involved a hospital employee on call 24 hours a day who had to arrive at the hospital in a limited period of time when called. While this case at first look seems identical to Bright's case, the district court and Northwest totally ignored one critical fact distinction. In *Pilkenton,* two employees shared the on call duty so that each employee was freed of the duty for half of his or her work time. Thus, the employees were not being held on a "twenty minute leash" that kept them from ever travelling to many parts of a big city, or to nearby cities, or from engaging in recreational activities. As a further distinguishing fact in *Pilkenton,* the employees received some compensation for their time on call, even on those shifts during which they did not receive any calls. *Pilkenton,* therefore, falls short of controlling in Bright's case.

Northwest also points to our decision in *Rousseau v. Teledyne Movible Offshore,*

---

1. The Supreme Court has noted that the Wage and Hour Administrator's interpretations under the FLSA, "while not controlling upon the courts by reason of their authority, do consti tute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore,* 323 U.S. at 140, 65 S.Ct. at 164.

*Inc.,* 805 F.2d 1245 (5th Cir.1986), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987). There we affirmed a lower court's determination that time employees spent on call on off-shore drilling barges was not compensable time under the FLSA. Northwest argues that the employees in *Rousseau* were more restricted than was Bright since they were required to remain on the premises for their on call time, even though they "were free to sleep, eat, watch television, watch VCR movies, play ping-pong or cards, read, listen to music, etc." *Rousseau,* 805 F.2d at 1248 (quoting *Rousseau v. Teledyne Movible Offshore, Inc.,* 619 F.Supp. 1513, 1520 (W.D.La.1985)). Even though Bright was also permitted to engage in similar activities and was not required to remain on Northwest's premises, the requirements placed on him were not necessarily less stringent.

In urging us to follow *Rousseau,* Northwest again omits the critical fact: the restrictions only applied to the workers in *Rousseau* for seven days at a time. After those seven days, the employees had another seven full days where they were not living on the barges or working at all. They were absolutely free to engage in whatever activities they pleased. They were not on call during those days and were free to travel, visit friends, and engage in vacation activities. Unlike Bright, the employees in *Rousseau* had significant respite from duty to their employer.

Our other decisions involving on call time under the FLSA involve the same critical distinction. In *Allen v. Atlantic Richfield Co.,* 724 F.2d 1131 (5th Cir.1984), we refused to overturn a jury verdict that determined that time employees spent off duty but on employer's premises during a strike was not compensable time. The employees were security guards who, during a strike, worked twelve hour shifts and were then off duty for twelve hours. During the off duty time, they were not likely to be called. But they were required to stay on the premises. The employees received some additional compensation for this time since they reached an agreement with the employer that paid them a higher hourly rate for their first forty hours of work than it had paid them before the strike. But again, of critical importance is the fact that the arrangement was a temporary one, lasting only the length of the strike.[2] In *Allen,* then, employer and employees appeared to have reached a reasonable agreement for a short term situation.

Similarly, in *Brock v. El Paso Natural Gas,* 826 F.2d 369 (5th Cir.1987), on call employees were only on call in shifts. They were given a great deal of latitude in deciding when they would be on call and then they were apparently on call for only one night at a time. If an employee needed relief while on call, he or she would receive that relief and would be paid overtime for the time spent awaiting it. If the employee had a personal emergency, he or she could leave the site unattended. In contrast, Bright was not only always on call but Northwest apparently made no attempt to provide him backup relief.[3]

In our most recent case dealing with the waiting to be engaged doctrine, *Halferty v. Pulse Drug Co., Inc., supra,* the employee also had significant respite from being on call. In that case, the employee worked out of her own home as a telephone dispatcher for an ambulance company. Consequently, her entire job was comprised of being on call. She worked from 5:00 p.m. to 8:00 a.m. five nights a week and, conse-

---

2. We stated in *Brock v. El Paso National Gas, infra,* that the temporary nature of the strike in *Allen* was "irrelevant." *Brock,* 826 F.2d at 374. But we did so as part of saying that a violation of the FLSA would be a violation, regardless of the length of time that the violation occurred. For our purpose, the time period in *Allen* is important, both because it contributes to the reasonableness of the agreement between the employer and employees and because it stands in sharp contrast to Bright's situation from which there was never reprieve.

3. Bright claims that at one point Northwest paged him while he was undergoing emergency treatment at Northwest for a suspected heart attack. He responded to the page and solved the problem for which they had paged him.

**1064**

quently, had her days and weekends free.[4] Even when she was working, she was permitted to have her calls forwarded to another number or to have someone else answer the telephone calls. She was not required to remain close to any certain location. Her situation, then, also differed greatly from Bright's.

Northwest also refers us to the Eighth Circuit's opinion in *Dumas v. King*, 157 F.2d 463 (8th Cir.1946). There, the court affirmed a lower court's finding of fact that time the plaintiff was on call did not constitute time that he was "engaged to wait" and was therefore not compensable. *Dumas*, 157 F.2d at 466. In that case, the plaintiff complained that he might be called at any time to service machinery. If he was not going to be home, he was required to notify the plant where he could be reached in case of an emergency. He was apparently not, however, required to be available to report within a specified time span.[5]

As these other cases and the regulations reveal, the critical point underlying Bright's claim and distinguishing those cases was the total lack of any respite from the stringent limitations. In effect, he was not far removed from a prisoner serving a sentence under slightly relaxed house arrest terms. He never could go to downtown Houston, he never could go to Galveston and see the ocean. He never could go to a baseball or football game in the Astrodome. An out of town event, even a visit to relatives or friends in San Antonio or Austin, was totally out of the question. It is highly doubtful that many employees in this country would accept such permanent restrictions upon the normal freedoms that citizens generally enjoy all in the name of the claim that, while the restrictions were

obligations of the job, he was never working while he was subjected to them.

### III.

Bright's case, then, presents a "question of fact to be resolved by appropriate findings of the trial court." *Skidmore*, 323 U.S. at 136–37, 65 S.Ct. at 163. Bright may not be able to prove his case; the restrictions may be less than the record now presents. In any event the law indicates sleeping and eating time are not work time and are not compensable under the Act. *See id.* at 139, 65 S.Ct. at 164; *Armour, supra;* 29 C.F.R. 785.22. We hold that a trial is necessary to assess thoroughly the specific facts of Bright's case. Only through a trial can a determination be made as to what amount of time he spent on call, if any, might be compensable.

In short, we find a lack of authority for granting Northwest a summary judgment. In *Skidmore*, the Supreme Court made it clear that the determination of whether on call time falls under the FLSA is highly fact specific. In the absence of any authority, which goes even close to the extremes presented here as to the restrictions upon Bright's time because of his job, we cannot affirm summary judgment.

REVERSED AND REMANDED FOR TRIAL.

GARWOOD, Circuit Judge, dissenting:

I respectfully dissent.

Here, while "on call," appellant was subject to *no* restrictions except that he be callable by pager, be able to arrive at his employer's premises within, in his words, "approximately twenty minutes," and be in physical and mental condition sufficient to perform his job on arrival.[*] It is

---

**4.** When she first began the job, she also answered calls throughout the weekend.

**5.** It is difficult to discern from the opinion many of the specific facts on the issue of on call time, since it was not the central issue in the case and since the court deferred to the district court's findings. Thus, we do not know if there were times where the employee was relieved from duty. Even if the facts more closely paralleled those of Bright's case, the opinion would offer us little guidance. Because the Eighth

Circuit considered *Dumas* on direct appeal from a judgment resulting from trial, the court afforded great deference to the district court's findings, repeating from *Skidmore* that whether on call time falls under the FLSA "is a question of fact to be resolved by appropriate findings of the trial court." *Dumas*, 157 F.2d at 466 (quoting *Skidmore, supra* ).

[*] Indeed, it appears undisputed that appellant was able to live in a county adjoining that where his

undisputed during this time appellant "could visit friends, entertain guests, sleep, watch television, do laundry," and the like. *See Halferty v. Pulse Drug Co., Inc.*, 864 F.2d 1185, 1189 (5th Cir.1989). Plainly, during appellant's on call time he was much less restricted than were the employees in *Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245 (5th Cir.1986), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987), and *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131 (5th Cir.1984), where we held that the on call time was not to be considered for overtime purposes. We reaffirmed these decisions in *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369, 373–74 (5th Cir.1987), where we reversed and rendered a district court's finding that the on call time was to be considered for overtime purposes. Moreover, the amount of freedom which the appellant had during his on call time here is comparable to that of the employees in *Pilkenton v. Appalachian Regional Hospitals, Inc.*, 336 F.Supp. 334, 336 (W.D.Va.1971), and *Norton v. Northern Van Service, Inc.*, 839 F.2d 653, 655–56 (10th Cir.1988), where the time in question was held not countable for overtime purposes. We cited *Pilkenton* and *Norton* with approval in *Halferty. Id.*, 864 F.2d at 1190.

The majority does not really quarrel with this analysis, and, at least inferentially, concedes that for any given hour, day, or week of on call time appellant was as free to use the time for his own purposes as were the employees in the above-cited cases. However, the majority distinguishes those cases because appellant remained in an on call status for the entire period from February 1982 through January 1983. That, it seems to me, is irrelevant to his entitlement to overtime compensation. The threshold question is the nature of what appellant was free to do *while* he was on call, not how long he was on call. It seems to me that we expressly recognized this in *Brock*, where we refused to distinguish *Allen* on the ground that the

twelve-hour off-shift waiting time (the other twelve hours in each day being working time), when the employees had to remain on the plant premises, "lasted only three months." We said that was "irrelevant." *Brock*, 826 F.2d at 374. The majority's attempt to say that this language in *Brock* means something else is wholly unconvincing to me.

It is true that the lengthy duration of appellant's on call status was calculated to make his job one that most of us might well find quite oppressive. But the overtime provisions of the Fair Labor Standards Act are more narrowly focused than being simply directed at discouraging or requiring extra compensation for oppressive conditions of employment. A Texan working 8:30 p.m. to 3:00 a.m. six days a week, fifty-two weeks a year, at a remote location in the Alaskan wilderness, has what one must suppose is a most restrictive and oppressive job, which as a practical matter prevents, among other things, vacations, visiting relatives, and attending major league sporting events. But none of those circumstances call into play the overtime provisions of the Fair Labor Standards Act. Such provisions, 29 U.S.C. 207(a)(1), require overtime compensation for, and only for, hours worked in excess of forty *during a given workweek*. It would seem to necessarily follow that each week stands on its own bottom, and that what one did in the preceding week, or in the following week, is irrelevant to whether one worked in excess of forty hours during the week in question. Similarly, the freedom that the employee has *during* his on call time throughout, for example, the first week in September is in no way affected by whether he was on call the last week of August or will be on call the second week of September.

We have held that employees who were (when not actively engaged in their regular work) "on call" throughout an entire week or an entire three-month period and accord-

---

employer's place of business was located and approximately seventeen miles away from it.

Also, it was clearly agreed between appellant and his employer that he was not working for

his employer during, and would not be compensated by his employer for, on call time, though he was fully compensated whenever he actually was called.

ingly required to at all times remain on their employer's premises were nevertheless not entitled to have such on call time considered for overtime purposes. *Rousseau; Allen.* Given the workweek structure of section 207(a)(1), it appears to me that the majority's holding here is necessarily inconsistent with those decisions. Nor does the majority cite any cases supporting the result which it reaches here or its novel theory that it is not the employee's freedom during the time that he is on call which counts, but that rather the longer the employee is on call the more likely is it that all the "on call" time will be considered work time. I therefore respectfully dissent.