Frederick George BRIGHT, Plaintiff–Appellant,

v.

HOUSTON NORTHWEST MEDICAL CENTER SURVIVOR, INC., Defendant–Appellee.

No. 88–2884.

United States Court of Appeals, Fifth Circuit.

July 2, 1991.

Maurice Bresenhan, Jr., Campbell, Athey, Zukowski & Bresenhan, Houston, Tex., for plaintiff-appellant.

Gail Magers, Sullins Johnston Rohrbach & Magers, Houston, Tex., for defendant-appellee.

Before CLARK, Chief Judge, POLITZ, KING, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER and BARKSDALE, Circuit Judges.[1]

GARWOOD, Circuit Judge:

This is a former employee's suit for overtime compensation under section 7(a)(1) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1). The question presented is whether "on-call" time the employee spent at home, or at other locations of his choosing substantially removed from his employer's place of business, is to be included for purposes of section 7 as working time in instances where the employee was not actually "called." The district court granted the motion for summary judgment of the employer, defendant-appellee Houston Northwest Medical Center Survivor, Inc. (Northwest), ruling that this on-call time was not working time and dismissing the suit of the employee, plaintiff-appellant Frederick George Bright (Bright). A divided panel of this Court reversed and remanded. 888 F.2d 1059 (5th Cir.1989). Disagreeing with the panel majority's contrary conclusion, this Court en banc now holds that the undisputed facts afford no basis for a finding that the employee's on-call time was working time for purposes of section 7. We accordingly affirm the district court's summary judgment for the employer.

## Facts and Proceedings Below

Bright went to work for Northwest at its hospital in Houston in April 1981 as a biomedical equipment repair technician, and remained in that employment until late January 1983 when, for reasons wholly unrelated to any matters at issue here, he was in effect fired. Throughout his employment at Northwest, Bright worked a standard forty-hour week at the hospital, from 8:00 a.m. to 4:30 p.m., with half an hour off for lunch, Monday through Friday, and he was paid an hourly wage. Overtime in this standard work week was compensated at time and a half rates, and it was understood that overtime work required advance approval by the department head, Jim Chatterton. When Bright started at the hospital, his immediate supervisor was Howard Culp, the senior biomedical equipment repair technician. Culp had the same work schedule as Bright. However, throughout his off-duty hours, Culp was required to wear an electronic paging device or "beeper" and to be "on call" to come to the hospital to make emergency repairs on biomedical equipment. Culp, as Bright knew, was not compensated for this "on-call" time (although Culp apparently was compensated when he was called). In

1. Judge Emilio M. Garza was sworn in June 7, 1991, and elected not to participate in this en banc decision.

February 1982 Culp resigned, and Bright succeeded him as the senior biomedical equipment repair technician and likewise succeeded Culp in wearing the beeper and being on call throughout all his off-duty time. Bright remained in that role throughout the balance of his employment at Northwest. The only period of time at issue in this lawsuit is that when Bright had the beeper, namely from February 1982 to the end of his employment in January 1983.

Bright was not compensated for his on-call time, and knew this was the arrangement with him as it had been with Culp.[2] During the "on-call" time, if Bright were called, and came to the hospital, he was compensated by four hours compensatory time at his then regular hourly rate (which apparently was some $9 or $10 per hour) for each such call. This compensation was effected by Bright simply working that many less hours the following workday or days: for example, if Bright were called on a Monday evening, he might work in his regular workshift only from 8:00 a.m. until noon on the following Tuesday, but would be paid for the entire eight hours on that day. There is no evidence that these calls on average (or, indeed, in any given instance) took as much as two hours and forty minutes (two-thirds of four hours) of Bright's time. This case does not involve any claim respecting entitlement to compensation (overtime or otherwise) for time that Bright actually spent pursuant to a call from Northwest received while he was on call.[3]

It is undisputed that during the on-call time at issue Bright was not required to, and did not, remain at or about the hospital or any premises of or designated by his employer. He was free to go wherever and do whatever he wanted, subject *only* to the following three restrictions: (1) he must not be intoxicated or impaired to the degree that he could not work on medical equipment if called to the hospital, although total abstinence was not required (as it was during the daily workshift); (2) he must always be reachable by the beeper; (3) and he must be able to arrive at the hospital within, in Bright's words, "approximately twenty minutes" from the time he was reached on the beeper. Bright's answer to interrogatories reflect that in February 1982, when he commenced wearing the beeper and being on call, he was living about three miles, on average a fifteen-minute drive, from the hospital, but that in about July 1982 he moved his residence to a location some seventeen miles, on average a thirty-minute drive, from the hospital, and continued living there throughout all the remaining some five or six months of his Northwest employment. In his deposition, Bright said that this move was made with Northwest's specific prior approval; he also then described the driving time as twenty-five minutes, which he stated his employer said "would be sufficient time." On deposition Bright admitted while on call he not only stayed at home and watched television and the like, but also engaged in other activities away from home, including his "normal shopping" (including supermarket and mall shopping) and "occasionally" going out to restaurants to eat. While the record does not reflect all of Bright's activities while on call, it is *undisputed* that the only restrictions imposed on him were the three above noted. It is also clear that while on call Bright did no work for Northwest—apart from being in the on-call

2. Bright was told that efforts were being made to have a future hospital budget contain provision for some unspecified character of compensation in respect to his on-call and beeper status; but it was clear that this would only apply to periods after such a budget were approved (and would not be "retroactive"); as Bright knew all along, no such budget was ever approved.

3. The parties stipulated below that the only issue remaining in the case was overtime compensation (and liquidated damages, attorneys'

fees, and costs in respect thereto) for time, after February 2, 1982, during which plaintiff

> "was not required to remain on Defendant's premises [but] he was required to wear an electronic paging device in order that he could be contacted by Defendant and required to return and report to the hospital during periods when Plaintiff was not regularly scheduled to be working and when he was not responding to Defendant's requirement (via said electronic paging device) that Plaintiff return and report to the hospital."

status and what he did, and was fully and appropriately compensated for, pursuant to actually being called. Bright also testified on deposition that he was "called" on "average" two times during the working week (Monday through Friday) and "ordinarily two to three times" on the weekend.[4]

Bright filed the instant suit for overtime compensation under section 7 of the FLSA in October 1983. Discovery proceeded through 1986, during which Northwest moved for summary judgment. The district court granted the motion in August 1988, concluding that under the undisputed evidence the on-call time (apart from that spent responding to calls, which was not in issue) was not compensable or working time under section 7.

### Discussion

At issue here is whether the time Bright spent on call, but uncalled on, is working time under section 7, which provides in relevant part as follows:

"Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

■■■■ As the case was resolved below by granting Northwest's motion for summary judgment after ample time for discovery, and as Bright would have had the burden of proof on the dispositive issue at trial, we review the record to determine whether it contains sufficient summary judgment evidence to support a finding that Bright's on-call time, when he performed no active service for Northwest, was working time for purposes of section 7. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510–12, 91

L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The relevant facts recited above are not genuinely disputed, and we conclude that the record reflects no genuine issue of material fact and contains no evidence sufficient to support a finding that Bright's on-call time at issue was working time. Accordingly, the district court did not err in granting Northwest's motion for summary judgment.

Bright urges, and the panel majority apparently agreed, that under the decisions in *Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944) and *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), handed down the same day, the question whether such on-call time is working time is necessarily one of fact, thus precluding summary judgment or a directed verdict. This is not our reading of those decisions. Neither involved a summary judgment or a directed verdict or a discussion of the propriety of such a disposition. The thrust of the opinions in this respect was that whether waiting time was working time "is a question dependent upon all the circumstances of the case," *Armour* 65 S.Ct. at 168, as to which "[e]ach case must stand on its own facts", *Skidmore* 65 S.Ct. at 164, for the Court could not lay down a single "legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time." *Id.* 65 S.Ct. at 163. But to state, as this language does, that the particular facts in each case are determinative, is not to say that where those discrete facts are found the resulting categorization as working or nonworking time is also necessarily always a factual rather than a legal question. Indeed, *Skidmore* expressly recognizes that "[f]acts may show that the employee was engaged to wait, or they may show that he waited to be engaged." *Id.*[5] Obviously, the Court

---

4. Bright would thus have received sixteen to twenty hours of compensatory time in an average week.

5. We recognize that in the second sentence before this *Skidmore* states: "[W]hether in a concrete case such time falls within or without the

Act is a question of fact to be resolved by appropriate findings of the trial court," citing *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 63 S.Ct. 332, 337, 87 L.Ed. 460 (1943). *Skidmore* 65 S.Ct. at 163. Taken in context, we believe this language is properly understood as describing the dependency of the coverage ques-

does not mean that the *same* set of facts may lead to different results, but rather that the different facts of discrete cases may produce different results.

Here, the undisputed facts show that the on-call time is not working time. In such a setting, we have not hesitated to so hold as a matter of law. *See,· e.g., Halferty v. Pulse Drug Co.,* 864 F.2d 1185 (5th Cir. 1989); *Brock v. El Paso Natural Gas Co.,* 826 F.2d 369, 374 (5th Cir.1987) (" *'Stare decisis* means that like facts will receive like treatment in a court of law.' "); *Rousseau v. Teledyne Movible Offshore, Inc.,* 805 F.2d 1245, 1247 & n. 1 (5th· Cir.1986) (summary judgment as to offshore barges).

*Armour* and *Skidmore* clearly stand for the proposition that, in a proper setting, on-call time may be working time for purposes of section 7. But those decisions *also* plainly imply that that is *not* true of employer-required on-call time in *all* settings.· In *Skidmore* the Court noted, with at least .some degree of implied approval, the administrative interpretations that

"[i]n some occupations ... periods of inactivity are not properly counted as working time even though the employee is subject to call. Examples are an operator of a small telephone exchange where the switchboard is in her home and she ordinarily gets several hours of uninterrupted sleep each night; or a pumper of. a stripper well or watchman of a lumber camp during the off season, who may be on duty twenty-four hours a day but ordinarily 'has a normal night's sleep, has ample time in which to eat his meals, and has a certain amount of time for relaxation and entirely private pursuits.' Exclusion of all such hours the Administrator thinks may be justified." *Id.* 65 S.Ct. at 163–64.

In *Armour* the plaintiffs were firemen who worked a regular 8:00 a.m. to 5:00 p.m. shift, and then were on call at the employer's premises from 5:00 p.m. until 8:00 a.m. of the following day, after which they had 24 wholly unrestricted hours, and then repeated the cycle. The Court observed that

"[t]he litigation concerns the time [5:00 p.m. to 8:00 a.m.] during which these men were required to be on the employer's premises, to some extent amenable to the employer's discipline, subject to call, but not engaged in any specific work. The Company provided cooking equipment, beds, radios, and facilities for cards and amusements with which the men slept, ate, or entertained themselves pretty much as they chose. They were not, however, at liberty to leave the premises except that, by permission of the watchman, they might go to a nearby restaurant for their evening meal." *Id.* 65 S.Ct. at 166. ·

*Armour* sustained the district court's determination, which had been affirmed by the Seventh Circuit, that all this time (apart from hours presumably devoted to sleeping or eating, a matter that the plaintiffs did not appeal) was working time.[6]

---

tion on the particular facts as found in each discrete case, a view that is reinforced by the citation to the portion of *Jacksonville Paper Co.,* where the Court approves a remand for new factual findings, observing that "[i]f a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the Act. Here as in other situations [citation omitted] the question of the Act's coverage depends on the special facts pertaining to the particular business." *Jacksonville Paper Co.,* 63 S.Ct. at 337.

**6.** In *Skidmore* the facts were similar, and the district court, which this Court had affirmed, concluded that "the time plaintiffs spent in the [employer's] fire hall subject to call to answer fire alarms does not constitute hours worked." *Id.* 65 S.Ct. at 163. The Supreme Court reversed and remanded for reconsideration because the lower court determination apparently rested on the erroneous notion that "waiting time may not be work." *Id.* 65 S.Ct. at 164. While observing the similarity to *Armour,* the *Skidmore* opinion also stated that "[t]he evidence in this case in some respects, such as the understanding as to separate compensation for answering alarms, is different [from *Armour* ]." *Id.* In *Armour* there was no agreement or payment for on-call time actually spent answering an alarm (although in the suit the employer did not contest liability for such alarm answering time); but in *Skidmore* there was agreed compensation in case the employees received such a call. *See Wantock v. Armour & Co.,* 140 F.2d 356, 357 (7th Cir), *aff'd sub nom. Armour & Co. v. Wantock, supra. See also Skidmore* 65 S.Ct. at 162. Further, in *Skidmore* the men apparently did not have to remain strictly on the employer's

Bright's case is wholly different from *Armour* and *Skidmore* and similar cases in that Bright did not have to remain on or about his employer's place of business, or some location designated by his employer, but was free to be at his home or at any place or places he chose, without advising his employer, subject only to the restrictions that he be reachable by beeper, not be intoxicated, and be able to arrive at the hospital in "approximately" twenty minutes.[7] During the period in issue he actually moved his home—as Northwest knew and approved—to a location seventeen miles and twenty-five or thirty minutes away from the hospital, as compared to the three miles (and some fifteen minutes) away that it had been when he started carrying his beeper. Bright was not only able to carry on his normal personal activities at his own home, but could also do normal shopping, eating at restaurants, and the like, as he chose.

To hold that Bright's on-call time was working time would be inconsistent with several of our own prior decisions, as well as those in other circuits, which have determined that considerably more restrictive on-call status did not result in work time.

In *Brock*, we held clearly erroneous and reversed and rendered a district court bench trial finding that "on call" time was compensable overtime. There, the employee claimants lived relatively near their employer's pumping stations where their regular work day was 7:30 a.m. to 4:00 p.m. However, during the nonworking hours of 4:00 p.m. to 7:30 a.m. every day, one employee was required to remain "on call"; this required the employee to remain at his home where he could hear an alarm; if it went off, he would go to the station to correct the problem. We noted that "[o]therwise, the on-call employee is free to eat, sleep, entertain guests, watch television, or engage in any other personal recreational activity, alone or with his family, as long as he is within hailing distance of the alarm and the station." *Id.* at 370 (footnote omitted). The employees were compensated for this time only in instances where they were actually called. We held that as a matter of law the on-call time was not work time for purposes of the FLSA.

In *Halferty*, we again held to be clearly erroneous the district court's finding that the on-call time was compensable overtime, and reversed and rendered judgment that it was not. There, the employee time in question was spent at home from 5:00 p.m. to 8:00 a.m. to be available for telephone calls as an ambulance dispatcher. We stated that in these cases "the critical issue ... is whether the employee can use the time effectively for his or her own purposes." *Id.*, 864 F.2d at 1189. We held that as a matter of law the plaintiff there could use the time effectively for her own purposes and that she was hence not entitled to recover, stating:

> "The facts show that Halferty could visit friends, entertain guests, sleep, watch television, do laundry, and babysit. We, therefore, conclude that she could use the time for her own purposes and that she is not entitled to compensation for her idle time...." *Id.*

We noted that "[e]mployees who have received compensation for idle time generally have had almost no freedom at all." *Id.* at 1190. And, we cited and relied on, among other cases, *Norton v. Worthen Van Service, Inc.*, 839 F.2d 653 (10th Cir.1988), and

---

premises, so long as they were "within hailing distance" thereof, *id.*, while no such accommodation appears to have been present in *Armour*.

7. The administrative interpretations reflect the difference in kind between situations where the on-call employee has to remain at or about the employer's place of business and those where the on-call employee can be at home or other accessible places of his choosing. *See* 29 CFR § 785.17:

> "An employee who is required to remain on call on the employer's premises or so close

thereto that he cannot use the time effectively for his own purposes is working while 'on call.' An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call."

We recognize that these interpretations do not have the force of law and that we are not required to defer to them, although they may properly be considered as to some degree persuasive. *Skidmore*, 65 S.Ct. at 163.

*Pilkenton v. Appalachian Regional Hospitals, Inc.*, 336 F.Supp. 334 (W.D.Va. 1971).

In *Norton*, the plaintiffs were van drivers who transported railroad crews at irregular and unpredictable intervals. During the disputed on-call time, "drivers must be near enough to the employer's premises to be able to respond to calls within fifteen to twenty minutes." 839 F.2d at 654. They were only compensated, however, in the event they were actually called. They argued "that the unpredictability of assignments and the short response time which they are allowed preclude their using this waiting period for their own purposes." *Id.* (footnote omitted). The district court judgment for the employer was affirmed, the Tenth Circuit noting that the "drivers spent their time between assignments at the homes of friends, at church, at laundromats, at restaurants, at pool halls, and at a local gymnasium" and that "a simple paging device, which the drivers are free to purchase and to use, would have allayed the necessity of remaining by a phone." *Id.* at 655–56.

In *Pilkenton*, the on-call employees had beepers and had to remain within an "approximately twenty minutes" drive from their employer's hospital during their on-call time. That time was held noncompensable (except for instances where they were called).

Also to be considered are our decisions in *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131 (5th Cir.1984), and *Rousseau*. In *Allen*, guards at a plant under strike from early January to the end of March were required to remain at the plant twenty-four hours a day, during twelve of which they were on duty, and during the other twelve they "were free to sleep, eat at no expense, watch movies, play pool or cards, exercise, read, or listen to music.. . ." 724 F.2d at 1137. They were not compensated for this off-duty time (except that if, in an emergency, they were called to work during the off-duty time they were paid for that work). We upheld a verdict for the defendant that this off-duty time was not compensable.

In *Rousseau*, the claimant employees worked on derrick barges for seven-day shifts, twelve hours each day; during the other "off" twelve hours, however, they were required to remain on the barges and to be available for emergency work. They were compensated only for the time they actually worked, not for any of the twelve-hour waiting time (except for such actual work as they might do during that time) spent on the barges. The requirement that the employees remain on the barges was applicable not only when the barges were offshore, but also when the barges were docked. The district court granted the employer's motion for summary judgment with respect to the off-duty time spent on the barges when they were offshore, and, following a bench trial, granted judgment for the employer as to the off-duty time spent on the barges while they were docked. 805 F.2d at 1247 & n. 1. We affirmed, relying on the statement in the district court's opinion that "[t]he stipulated facts and evidence show that during their off duty time on the barges, the plaintiffs were free to sleep, eat, watch television, watch VCR movies, play pingpong or cards, read, listen to music, etc." *Id.* at 1248.

As noted, we have described "the critical issue" in cases of this kind as being "whether the employee can use the [on-call] time effectively for his or her own purposes." *Halferty*, 864 F.2d at 1189. This does not imply that the employee must have substantially the same flexibility or freedom as he would if not on call, else all or almost all on-call time would be working time, a proposition that the settled case law and the administrative guidelines clearly reject. Only in the very rarest of situations, if ever, would there be any point in an employee being on call if he could not be reached by his employer so as to shortly thereafter—generally at least a significant time before the next regular workshift could take care of the matter—be able to perform a needed service, usually at some particular location.

Within such accepted confines, Bright was clearly able to use his on-call time

effectively for his own personal purposes. Indeed, it is evident that he was *much more* able to do so than the employees in the above discussed cases whose on-call time was held to be nonworking time. Unlike the employees in *Brock* (restricted to home or plant), *Halferty* (restricted to home), *Rousseau* (restricted to barge), and *Allen* (restricted to plant), Bright was not restricted to any one or a few fixed locations, but could go virtually anywhere within approximately twenty minutes of the hospital, and indeed he lived (and moved to) approximately seventeen miles and thirty minutes away from the hospital. Within that limit, anything was permissible, except excessive alcohol consumption. An approximately twenty minute radius was involved in *Pilkenton* and fifteen to twenty minutes in *Norton*. We have found no unreversed decision holding compensable on-call time that afforded even nearly as much freedom for personal use as did Bright's. Had the twenty to thirty minute "leash" been longer, Bright would, of course, have been able to do *more* things, but that does not mean that within the applicable restrictions he could not effectively use the on-call time wholly for his own private purposes. Millions of employees go for weeks at a time without traveling more than seventeen miles from their place of employment.

The panel majority did not disagree with our prior decisions. Rather, it placed crucial reliance on the fact that Bright throughout the nearly one year in issue never had any relief from his on-call status during his nonworking hours. The panel majority states that Bright's case "differs from ... other cases in one important respect: Bright ... never had any reprieve from on-call duties," *Bright*, 888 F.2d at 1061; "the restrictions only applied to the workers in *Rousseau* for seven days at a time," which it described as "the critical fact," *id.* at 1063; *Allen* was distinguished because "of critical importance is the fact that the arrangement was a temporary one, lasting only the length of the strike," *id.* (footnote omitted). In essence, the panel majority inferentially conceded that for any given day or week of on-call time, Bright was as free to use the time for his own

purposes as were the employees in the above-cited cases where the time was held nonworking. But the panel majority claims that a different result should apply here because Bright's arrangement lasted nearly a year.

We are aware of no authority that supports this theory, and we decline to adopt it, just as we did in *Brock*. There we rejected the district court's attempted distinguishment of *Allen* on the basis that the "off-shift waiting time was temporary since the strike lasted only three months." *Brock*, 826 F.2d at 374. We responded: "This circumstance is irrelevant. Compliance with the FLSA is not excused for even temporary periods of time." *Id.*

Further, the FLSA is structured on a workweek basis. Section 7, at issue here, requires time and a half pay "for a workweek longer than forty hours." What Bright was or was not free to do in the last week in September is wholly irrelevant to whether he worked any overtime in the first week of that month. As we said in *Halferty*, the issue "is whether the employee can use the time effectively for his or her own purposes," and that must be decided, under the statutory framework, on the basis of each workweek at the most.

We do not deny the obvious truth that the long continued aspect of Bright's on-call status made his job highly undesirable and arguably somewhat oppressive. Clearly, it would have been vastly more pleasant from Bright's point of view had he only been on call the first week of every month, for example. But the FLSA's overtime provisions are more narrowly focused than being simply directed at requiring extra compensation for oppressive or confining conditions of employment. A Texan working 8:30 p.m. to 3:00 a.m. six days a week (thirty-nine hours), fifty-two weeks a year, at a remote Alaska location has a most restrictive and oppressive job that as a practical matter prevents, *inter alia*, vacations, visiting relatives, and attending live operatic performances or major league sporting events, but it seems obvious that the FLSA overtime provisions provide no relief for those oppressive and confining

conditions. Bright's job was oppressive and confining in many of the same ways, but it, too, did not involve more than forty hours work a week.[8]

The district court properly granted summary judgment for Northwest, and that judgment is accordingly

AFFIRMED.

JERRE S. WILLIAMS, Circuit Judge, with whom JOHNSON, Circuit Judge, joins, dissenting:

I dissent from the decision of the en banc court in this case. The posture in which the case is presented to us and the use of irrelevant authority reveals that the conclusion on the critical issue is in error. The facts as stated in the opinion for the Court are accurate insofar as they go. They need supplementation by way of emphasis. The panel opinion and this dissent are grounded wholly on the circumstance which must be accepted as true that for a period of approximately eleven months from February 1982 until January 1983, employee Bright's life was significantly circumscribed by his employer without compensation. There was no relief by way of other employees sharing the duties so that Bright would have periods of being free from the restrictions. There were no free weekends, there was no vacation, there were no free days or nights. This is the core issue in the case.

Under these circumstances, the Court abandons its proper role by affirming a summary judgment that Bright was not working during any of the time periods he was stringently limited in his activities by the employer but was not required to be on the premises. The Supreme Court established the authority which controls this case in the two landmark cases of *Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), and *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). When there is any likelihood that the restrictions resulting from on-call time can amount to work time "[w]hether in a concrete case such time

falls within or without the Act is a *question of fact* to be resolved by appropriate findings of the trial court." *Skidmore,* 323 U.S. at 136–37, 65 S.Ct. at 163 (emphasis added).

Further, the court or the jury in making the determination as to whether such time is work time is not required to find all or nothing—that the full 16 hours away from the plant and 24 hours on weekends is or is not work time. *Skidmore* and *Armour* recognized that time spent typically in sleeping, eating, and normal recreation, could properly be found not to be work time under such circumstances. The critical point is that the unique fact in this case, the failure of the employer to provide any relief 24 hours a day, 7 days a week, for the entire 11 month period raises a fact issue as to the extent of work time.

I do not go into detail to comment upon the cases discussed and treated as controlling by the majority opinion of the en banc court. None of them control. Every single one of them, without exception, involves a situation where the employer had more than one employee sharing the oppressive schedule or there was some other means of "covering the employee" so that the employee was not committed and under serious limitations without respite over a substantial period of time. These cases are discussed and distinguished in detail in the panel opinion, *Bright v. Houston Northwest Medical Center Survivor, Inc.,* 888 F.2d 1059, 1062–1064 (5th Cir.1989).

The nearest case to the facts of this case has to do with the employee Pilkenton, who was on a schedule with virtually the identical restrictions as Bright. *Pilkenton v. Appalachian Regional Hosps., Inc.,* 336 F.Supp. 334 (W.D.Va.1971). But in *Pilkenton* another employee shared the on-call duty so that each employee was freed of the duty and personal limitations for half of his or her overall time. Thus, the employees were not being held on a permanent 20 minute leash.

---

**8.** Except in instances, not at issue here, where the extra work was compensated consistently with section 7.

At the end, the opinion for the Court falls back, as it must, upon the proposition that Bright was in the same situation as someone holding a job in a remote part of Alaska where, after an eight hour day, the use of his or her own time obviously is limited. This reliance is wholly foreign to the thrust of the Fair Labor Standards Act. Admittedly, there are jobs which because of location are in isolated areas. That is in the nature of the jobs. But the isolation is not the result of an employer's direction requiring employee on-call availability during off-duty hours. The employer has nothing to do with the restricted recreational and living accommodations in an isolated job. That is not an on-call situation at all. In contrast, here it is the employer who is enforcing a unique restriction upon a particular employee as part of the particular on-call work assignment. This is of the essence of the thrust of potential work time under the Fair Labor Standards Act.

This distinction can be seen more clearly if in an extreme case the employer directed a particular employee permanently to remain behind on the hospital campus for an hour each day after the workshift was over in case some problem arose about the changeover from one shift to another. The employee would be free to read a book, watch television, walk around the grounds, but would be required to remain on the grounds for an hour in case the employee was needed. It would be exceedingly difficult to hold that that particular hour was not work time. It would be an additional on-call restriction for the benefit of the employer placed upon the employee for an extra hour every day but without compensation.

Bright's case, of course, is not that extreme in its restriction. But it is not a remote location case caused by the nature of the work applicable to all jobs. It is an on-call isolation case caused by the employer's own orders defining the particular work assignment. Thus, we are left, as the panel opinion said, with the circumstance in which Bright "was not far removed from a prisoner serving a sentence under slightly relaxed house arrest terms. He never could go to downtown Houston, he never could go to Galveston and see the ocean. He never could go to a baseball or football game in the Astrodome. An out of town event, even a visit to relatives or friends in San Antonio or Austin, was totally out of the question." *Bright*, 888 F.2d at 1064. Further, the employer had a relatively simple and humane means of avoiding this restriction which was akin to and rather close to house arrest. The remedy is found in every single one of the cases cited by the majority opinion and relied upon by the majority opinion. The employer could have set up a system under which this onerous restrictive duty could be shared or certain periods of relief could be afforded.

Finally, the opinion for the Court asserts that all overtime issues under the statute must be based upon a week by week analysis. We have said this in a case where it is relevant, but there are instances where the courts have recognized that the week by week test is not adequate. While the FLSA calls for the calculation of the payment of overtime on a weekly basis, it does not require that each individual week be a wholly separate entity in determining whether an employee is working or not.

In *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131 (5th Cir.1981) (cited in the en banc opinion), we considered a case in which security personnel because of a strike were required to remain on the grounds of the industrial establishment for 24 hours every day for a period of what was apparently the first few weeks of an eleven week strike. Later, arrangements were made during the strike to rotate the 24 hour duty. The jury found that the security employees were not working during this period when they were off duty although they were required to remain at the plant. We upheld the jury verdict.

We can draw two authoritative conclusions from our decision in this case. First, the opinion makes no reference to a week by week limitation but instead assumed that the entire time during which the 24 hour requirement was in effect was relevant to the work time issue. Second, the case shows that we can and should trust

juries in these cases to deny bonanzas to unfounded claims of extra work. The jury found no additional work time in that relatively short period of a few weeks involved in *Allen.*

Bright may not be able to prove to a jury that he was entitled to any additional work time credit. Further, the restrictions may not have been as stringent as the record which we must now accept indicates. But I dissent because this is not a case for summary judgment. A trial is necessary to assess the facts of this case. As the Supreme Court held in *Skidmore,* the determination of whether on-call time falls under the FLSA is highly fact-specific. There is a total absence of any authority which goes even close to the extreme presented to us as to the permanent, unrelenting, restrictions placed upon Bright's time by his employer. Thus, it was error to affirm the summary judgment of the district court. Bright is entitled to a jury trial on the facts presented to us. The well-established requirement of the Fair Labor Standards Act that on-call time can constitute work time requires this result and prompts this dissent.