26 F.3d 131
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William V. MINER; Tari I. Miner, a marital community,
Plaintiffs-Appellants,
v.
B & C EQUIPMENT, INC., a subsidiary of Pemco of Portland,
Inc., a foreign corporation, Defendant-Appellee.
 No. 93-35401.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 5, 1994.
Decided May 18, 1994.
 
 Before: TANG, BOOCHEVER, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 William Miner appeals the district court's grant of summary judgment to B & C Equipment, Inc. He claims that the district court erred in finding that the Fair Labor Standards Act did not entitle him to overtime compensation for his on-call time. We AFFIRM.
 
 FACTS AND PROCEDURE
 
 3
 William Miner worked as a serviceman for B & C Equipment, Inc. ("B & C") from 1986 to early 1991. B & C services gasoline service station pumps and other equipment at its customers' stations. When a station needs after-hours repair, it calls B & C's answering service, which pages the "on-call" serviceman. Beginning in 1988, Miner was on call after regular working hours to do mechanical and maintenance work, repairing service station buildings and equipment. The on-call time began as one week per month, but often Miner was on call for longer periods.
 
 
 4
 When Miner was on call, he wore a pager on which he was beeped when a station needed service, and he drove a company truck so he would be ready to respond to calls. If the call was for emergency service, Miner was required to be in the truck on his way or at the service station within an hour. Longer response times applied to nonemergency service calls, some as long as 24 hours. Miner received few calls, and in "a lot of weeks" he received no calls at all.
 
 
 5
 Miner was paid overtime wages for the time spent traveling to and from any after-hours service jobs, as well as for the time spent working at the station.
 
 
 6
 Miner complained about his after-hours on-call time, even throwing down his pager on one occasion. He was never sanctioned or given an official reprimand for any failure to respond on time to pages. He was fired in 1991, after B & C lost a large account and its need for maintenance work declined; his bad attitude about on-call time was one of the reasons for his termination.
 
 
 7
 Miner filed this action on February 7, 1992, claiming he was entitled to overtime wages under the Fair Labor Standards Act, 29 U.S.C. Sec. 207(a)(1) (1988), which requires overtime compensation for hours worked beyond 40 per week. B & C filed a motion for summary judgment on February 11, 1993, and the district court granted the motion on March 30, 1993.
 
 DISCUSSION
 
 8
 A grant of summary judgment is reviewed de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). We review the facts in the light most favorable to the nonmoving party, to determine whether there are any genuine issues of material fact and whether the district court properly applied the substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 9
 The Fair Labor Standards Act ("FLSA") requires overtime compensation for hours worked beyond 40 per week. 29 U.S.C. Sec. 207(a)(1) provides:
 
 
 10
 Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
 
 
 11
 Time spent waiting for work is compensable under the FLSA if the time is spent " 'primarily for the benefit of the employer and his business.' " Armour & Co. v. Wantock, 323 U.S. 126, 132 (1944) (quoting Tennessee Coal, Iron & R. Co. v. Muscoda Local, 321 U.S. 590, 598 (1944)). Whether the time is primarily the employer's or the employee's depends upon all the factual circumstances of the case, id. at 133, which must be examined to determine whether they "show that the employee was engaged to wait, or ... that he waited to be engaged." Skidmore v. Swift & Co., 323 U.S. 134, 137 (1944). If the employee is engaged to wait, his or her time is compensable. Id.
 
 
 12
 This circuit addressed the FLSA's application to on-call time in Owens v. Local No. 169, Ass'n of Western Pulp and Paper Workers, 971 F.2d 347 (9th Cir.1992), a case decided during the pendency of Miner's district court action. Owens identified seven factors that have been used to determine whether on-call time was properly the employee's or the employer's:
 
 
 13
 (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's [sic] movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time. Such a list is illustrative, not exhaustive. No one factor is dispositive.
 
 
 14
 Id. at 351 (footnotes and citations omitted). Another important factor in the determination is the agreement between the parties; although it is not dispositive, it is relevant if employees have implicitly accepted the on-call arrangement by continuing to work under its terms. Id. at 354-55.
 
 1. On-premises living requirement
 
 15
 There is no such requirement in this case. Even when employees were required to live on the employer's premises, courts have found on-call time was not compensable under the FLSA. See Brock v. El Paso Natural Gas Co., 826 F.2d 369, 373-75 (5th Cir.1987); Rousseau v. Teledyne Movible Offshore, Inc., 805 F.2d 1245, 1247-48 (5th Cir.1986), cert. denied, 484 U.S. 827 (1987); Norton v. Worthen Van Serv., Inc., 839 F.2d 653, 656 (10th Cir.1988) (van drivers occasionally required to remain on premises waiting for calls not entitled to overtime compensation).
 
 
 16
 2. Excessive geographical restrictions on employee's movements
 
 
 17
 Miner had a pager during his on-call time, so that he was not required to stay at home to monitor calls. He stipulated that the pager range was "from the crest of the [C]ascades to the east, to ... Bremerton to the west, to Chehalis to the south, and to Mt. Vernon to the north,", an area of almost 8,000 square miles. Miner apparently felt restricted not so much by the pager range as by the required response time, testifying at his deposition that he could not go to Seattle or Tacoma for dinner, an hour and a half from his home, or go hunting outside of the county, and be sure he could get home to his company truck and then to the job site on time.
 
 
 18
 Even viewing the facts in the light most favorable to Miner, his geographic restriction is less onerous than limitations that have been found insufficient to make on-call time compensable. B & C's provision of a pager liberated him significantly. See Birdwell v. City of Gadsden, 970 F.2d 802, 807-08 (11th Cir.1992) (detectives could purchase a beeper to leave home during on-call time, so requirement that they "immediately" report to work in uniform upon being called not sufficient for overtime pay); Bright v. Houston Northwest Medical Ctr. Survivor, Inc., 934 F.2d 671, 676 (5th Cir.1991) (en banc) (employee with beeper required to be at hospital within approximately twenty minutes of call could carry on normal personal activities), cert. denied, 112 S.Ct. 882 (1992). In Cross v. Arkansas Forestry Comm'n, 938 F.2d 912, 917 (8th Cir.1991), the employees' restriction to a thirty-five to fifty mile radio transmission range was a factor in awarding overtime pay because the employer required them "to monitor radio transmissions continuously during each work period, rather than contacting them exclusively by telephone or electronic pager." Miner was not unduly restricted geographically.
 
 3. Unduly restrictive frequency of calls
 
 19
 Miner admitted that he received few calls, and some weeks none at all. The calls were not unduly frequent. Compare Renfro v. City of Emporia, 948 F.2d 1529, 1532-33 (10th Cir.1991) (as many as thirteen and an average of three to five calls during firefighters' 24-hour on-call period "distinguish this case from other cases which have held on-call time as noncompensable"), cert. dismissed, 112 S.Ct. 1310 (1992).
 
 
 20
 4. Unduly restrictive fixed-time limit for response
 
 
 21
 B & C stated that its customers typically imposed a response time of four to twenty-four hours, and Miner effectively admitted that only some calls had a one-hour response time. Even accepting the most restrictive response time urged by Miner as true, the requirement that he be in the company truck on the way to the job within one hour is far less restrictive than other time periods for response in cases refusing to award overtime pay. See Armitage v. City of Emporia, 982 F.2d 430, 432 (10th Cir.1992) (twenty minutes after pager call to report to duty); Birdwell, 970 F.2d at 807 (after pager call, "immediately" report to work in uniform); Bright, 934 F.2d at 676 (after pager call, twenty minutes to report to hospital); Norton, 839 F.2d at 654 (after call, must respond in fifteen to twenty minutes).
 
 5. Easy ability to trade on-call time
 
 22
 Miner testified that he was able to trade on-call time. There was also a rotation system for assigning on-call time. Although in an affidavit submitted with his motion for summary judgment he claimed that he sometimes had no backup when he was on call, this is a different question than whether he could trade time in advance. His affidavit also claims, however, that the service manager eventually forbade trading, and he testified at his deposition that he sometimes was on duty three or four months at a time.
 
 
 23
 Viewing the evidence in the light most favorable to Miner, there may be an issue of fact whether trading or backup was available throughout his employment at B & C. Miner's affidavit and his deposition are somewhat inconsistent on this point. Even granting that there is some dispute about this element of the Owens analysis, however, the dispute is not material.
 
 
 24
 To preclude summary judgment, there must be a genuine issue of "[a] 'material' fact ... one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." T.W. Elec. Serv., 809 F.2d at 630 (emphasis added). Whether Miner always had the ability to trade on-call time is relevant to this element of the Owens test, but it would not affect the outcome. No single element is dispositive, Owens, 971 F.2d at 351, and Miner has not shown a genuine issue of material fact as to any other element. Further, in the light of Miner's uncontradicted testimony that he received few calls and some weeks none at all, his on-call time was not unduly restrictive whether or not he was able to trade.
 
 6. Use of a pager to ease restrictions
 
 25
 B & C issued a pager to Miner which he used during all on-call periods.
 
 7. Engaging in personal activities
 
 26
 Miner admitted that he was free to engage in "personal activities" while on call. He also admitted that he could sleep, watch television, watch movies, and listen to music. He testified that he could go to the grocery store, spend time with friends, hunt, go out to eat at the Eagles club, entertain guests in his home, and work in the yard. He could not report for a call under the influence of alcohol.
 
 
 27
 Miner's personal activities were thus virtually unrestricted as long as he could hear the pager and respond within the time required, which was never less than one hour. That the on-call time restricted the range of his personal activities is not enough to make overtime pay appropriate. " '[T]he employee [need not] have substantially the same flexibility or freedom as he would if not on call, else all or almost all on-call time would be working time, a proposition that the settled case law and the administrative guidelines clearly reject.' " Owens, 791 F.2d at 350-51 (quoting Bright, 934 F.2d at 677). The requirement that an on-call employee not report under the influence of alcohol is a common requirement that does not trigger FLSA overtime. See Gilligan v. City of Emporia, 986 F.2d 410, 411 (10th Cir.1993) (consumption of alcohol prohibited); Birdwell, 970 F.2d at 808 (same); Bright, 934 F.2d at 673 (employee must not be "intoxicated or impaired").
 
 8. Agreement between the parties
 
 28
 An agreement between the parties regarding an employer's on-call policy is relevant to determining whether overtime pay is required. Owens, 971 F.2d at 354. Even if the policy is a unilateral act by the employer and is disfavored by the employees, an agreement may exist if the employees knew about the policy and continued to work under those terms. Id. at 354-55.
 
 
 29
 Miner clearly knew of the policy throughout his employment, and although he disliked the on-call system, he did not quit. This "love it or leave it" approach to finding an agreement is harsh, but it is accepted as a valid consideration in other cases weighing whether on-call time is compensable under the FLSA. See, e.g., Skidmore, 323 U.S. at 137 (appraise the "practical construction of the working agreement by conduct"); Brock, 826 F.2d at 374 (continued employment implies agreement to employment terms); Rousseau, 805 F.2d at 1248 (same, even though some employees did not like the rule).
 
 
 30
 This case is factually similar to the Tenth Circuit's recent decision in Gilligan, where employees of city water and sewer departments sought overtime pay for on-call work. One employee was given a pager, and
 
 
 31
 he was required to be accessible through the pager at all times while on call ... to respond to a call within one hour and consumption of alcohol was prohibited. The requirement of accessibility through the pager dictated that Gilligan stay within the geographical limits of the pager, or leave a telephone number where he could be reached. Gilligan testified that he believed he was restricted to staying within the ... city limits.... [He was also] prohibited from participating in certain activities which would keep him from hearing his beeper, and he avoided paid-entrance activities from which he could be called away, as well as certain other activities from which the risk of being called away made him uncomfortable or fearful. Gilligan also believed that he was required to use a city vehicle to respond to calls, but could not use the vehicle for personal reasons, which further inhibited his on-call time. He was allowed to trade on-call time with other employees, with prior supervisor approval.
 
 
 32
 986 F.2d at 411. Under these facts, the 10th Circuit concluded that "[e]ven though plaintiffs' activities may be somewhat restricted while they are on call, the restrictions are not so prohibitive that it can be said that their on-call time is spent predominantly for the employer's benefit." Id. at 413. We find that Miner's on-call time was also sufficiently his own to make it uncompensable as overtime under the FLSA.
 
 
 33
 B & C asks for attorney fees as a sanction under Fed.R.Civ.P. 11 because Miner's appeal is "totally without foundation." B & C also filed a motion for sanctions in the district court, which the district court denied at the end of the litigation. This appeal is not so entirely without foundation that sanctions should be awarded.
 
 CONCLUSION
 
 34
 Because Miner's on-call time was not so restricted as to be "engaged to wait," we AFFIRM the district court's grant of summary judgment.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3